A. KLEIN AND WIFE v. F. A. GLASS.

1. MORTGAGE TO SECURE FUTURE ADVANCES.—As between the par-
ties, if the transaction be *bona fide*, a valid mortgage or deed of trust
can be made to secure future advances, as well as an existing indebt-
edness, and this applied, prior to the adoption of the present Constitu-
tion, to deeds of trust upon the homestead as well as upon other
property.

2. TRUSTS AND TRUSTEES.—When, by the terms of a deed of trust, the
*cestui que trust* is authorized to appoint a substitute trustee, in the
event of the death, refusal, or failure of the original trustee to act,
the trustee declined to execute the trust, unless, in addition to his
commissions, he was paid for his services : *Held*, That this constituted
such a failure as authorized the appointment of a substitute.

3. INTEREST—DEED OF TRUST.—If, by the terms of a deed of trust to
secure future advances, the rate of interest is not restricted to eight
per cent., an agreement to pay interest as high as twelve per cent. may
be enforced. In the absence of an agreement, eight per cent. only
could be collected, calculated from the 1st of January after the ac-
counts were made.

4. TRUST SALE.—See statement and opinion for facts under which prop-
erty worth $2,000 was sold at trust sale for $100, and the sale sus-
tained.

ERROR from Galveston. Tried below before the Hon. Wil-
liam H. Stewart.

Suit of trespass to try title, brought by F. A. Glass against
Adolph Klein and Emily V. Klein, his wife, to recover lot
number 3, block 15, and improvements thereon, in the city of

Galveston, and for damages. Defendants answered by general demurrer, general denial, and pleas of not guilty. The court overruled the demurrer, and there was a trial by jury. Verdict and judgment for plaintiff for the property. Motion for new trial by the defendants was overruled, and the case brought up on error.

On the 24th of February, 1875, plaintiffs in error owned the property sued for, and occupied and claimed the same as the homestead of themselves and children. A. Klein was doing a small grocery business in one part of the house, and Glass was engaged in the wholesale grocery business, from whom Klein bought supplies for his store. On February 24, 1875, Klein and wife executed a deed of trust on their homestead to R. G. Street, reciting a general indebtedness on open account by Klein to Glass for goods that day sold and then being sold, the amount not ascertained, and also reciting that Glass had agreed to sell Klein further goods for his store, for which Klein had agreed to pay by installments; that the deed of trust was to secure the balance at any time due on the account, and providing that should Klein make defaults in his payments, or if Glass should become dissatisfied with the arrangement, the trustee, upon request, might advertise and sell the property for the full amount of principal and interest due on open account, first giving Klein forty days' notice that payment was required. The deed provided that the recitals in the conveyance to the purchaser should be evidence of the matters therein set forth, and contained a clause for substitution in case the trustee was unable, died, failed, or refused to act.

Klein from time to time purchased goods from Glass, and received statements of his account. The deed was acknowledged by the wife in the manner prescribed by law. In September, 1875, he ceased purchasing, being at that time indebted to Glass, which the plaintiffs' evidence showed was not disputed, but which defendant's evidence showed was disputed. Glass claimed and Klein denied a verbal agreement to pay twelve per cent. interest on the account. To this verbal agreement, if it

existed, Mrs. Klein was not a party.    In the latter part of 1875, Glass' book-keeper took the trust deed and a memorandum statement claimed to be due by Klein to Glass, to Street, the trustee, and requested him to sell the property and make the money. Street asked for an itemized statement of the account, and never received it.    The trust deed remained with Street three or four months, during which time the book-keeper, under instructions from Glass, renewed his request to sell, but Street refused to do so.    Afterwards, D: B. Hatch, attorney for Glass, called upon Street, obtained the deed of trust, asked for and received a history of the transaction, and also Street's reason for not selling the property, as stated above.    Street further stated that he would not have made the sale unless Glass had secured him in his fee, because he considered the title so questionable that the commissions would not compensate him.    Plaintiff derived title under the deed of trust and under a deed made by Hatch, the substitute trustee, to Glass, reciting a sale made under the provisions and in accordance with the deed of trust.    At the sale by Hatch the property brought $100, plaintiff Glass being the purchaser.    The testimony tended to show that its value was $2,000 at the time.    The amount to satisfy which the sale was made, included the twelve per cent. interest charged by Glass under his alleged verbal agreement with Klein.

Glass testified as follows: "As soon as the sale of the property was made, I advised Klein by letter that I had bought it for $100, but that he might have it back if he would pay the debt and all costs.    I met Mr. Klein several times afterwards, and he said he was trying to sell the property so as to pay me what he owed me and save something for himself.    I brought suit for the property in September, 1876, Klein and wife then being in possession of it, but still gave Klein the privilege of paying the debt and taking the property back."    Glass sold the property to Campbell some time after the suit was instituted.    After the sale was made to Campbell, Klein spoke to Glass about the property, and Glass referred him to Mr. Sayles, who represented Campbell.

Klein, one of the defendants, testified: "At the date of the sale by Hatch, the property, including both land and improvements, was worth about $2,000. I have been trying to sell the property ever since the sale to pay this debt, [referring to the debt he owed Glass,] and save something for my family, but have been unable to do so. At one time I collected together some $400, took it to Glass, and he refused, saying Mr. Campbell had bought the property. Glass always told me I could have my property back by paying the debt, and after the suit was brought and the property sold to Mr. Campbell, I understood the same arrangements could be made; but I could not sell the property, and had nothing else in the world."

The court charged the jury on the question of the validity of the trust sale, in substance, as follows: "The validity of the trust sale, if in other respects valid, would not be affected by the mere fact that the lot at the sale may have brought much less than its value; but if property is sold at a grossly inadequate price, unless there be other evidence tending to show fraud in the sale, then such inadequacy of price cannot be taken into consideration for the purpose of showing the sale to be fraudulent."

The court further instructed the jury: "If you believe from the evidence that Glass gave Klein forty days' notice before the sale that payment of the balance due on the account was required, and that Klein was indebted to Glass the amount claimed by Glass, for which the property was sold, and that Glass rendered to Klein monthly statements of his account, and that no objection was made as to their correctness, and that the lot was sold by the substitute trustee in accordance with the terms and stipulations of the trust deed, and that the goods were sold by Glass to Klein, and that at the time of sale by the substitute trustee the amount of the account due was that for which the lot was sold by the trustee, then the plaintiff would be entitled to your verdict, although the account may have embraced twelve per cent. interest instead of eight per cent., if such increased interest did not affect the price for which the

lot was sold, and had no influence on the price for which it was sold. If you believe from the evidence that there was any fraud in connection with the trustee's sale of the lot, or that the stipulations of the trust deed were not complied with, then your verdict should be for the defendants."

*Scott & Levi* and *O. S. Eaton,* for plaintiffs in error.

I. The sale made under the trust deed, under which defendant in error made out his title, was irregular, and the price bid at the sale was so grossly inadequate to the real value of the property, that the sale itself might have been considered as fraudulent by the jury without further evidence of actual fraud; and the court erred in charging the jury that gross inadequacy of price could not be considered at a sale. (Sayles' Treat., sec. 86; McFaddin *v.* Vincent, 21 Tex., 47; Burch *v.* Smith, 15 Tex., 219; Allen *v.* Stephanes, 18 Tex., 658; Chamblee *v.* Tarbox, 27 Tex., 147.)

II. The charge of the court was erroneous in this: that the jury was therein instructed that sale under the deed of trust to satisfy a larger amount than was actually due by A. Klein to Glass, would not therefore be invalid, unless the jury should find that the increased amount influenced the price at which the property was sold at such sale. (Paschal's Dig., art. 1464; Rev. Code, art. 1327, p. 208; Laws 15th Leg., p. 227.)

III. The charge of the court was erroneous, in that the jury were therein instructed concerning the fraud necessary to invalidate the trust sale in terms which imply that actual fraud alone would be sufficient for that purpose, and that unless actual fraud was practiced in the making of said sale, inadequacy of price could not be considered for the purpose of showing the sale to have been fraudulent.

IV. The court erred in charging the jury that the substitute trustee, Hatch, could be appointed by Glass, because of Street's failure and refusal to act for want of an itemized statement of the indebtedness, and in refusing to charge the jury that such

refusal was not sufficient to authorize the appointment of a substitute trustee.

V. The trust deed under which defendant in error claimed title, was invalid, as being upon a homestead, in this: that by its terms it authorized the sale of said homestead for an uncertain and variable amount, the regulation of which was in nowise controlled or agreed to by the defendant, Emily V. Klein, and was actually increased beyond what she was led to believe would be the case, and was in all its parts and substance an executory, uncertain, and indefinite contract, incapable of being made certain, except at the will of persons other than Emily V. Klein, whose homestead it was.

*Davis & Sayles*, for defendant in error.

I. The facts show that the sale was regular; that there was no imposition, fraud, or deceit practiced by the purchaser at the trust sale on the plaintiffs in error; that the plaintiffs in error could have bought the property before the suit was brought, and afterwards, by paying the debt secured by the deed of trust; that the property could not be sold for more than enough to pay the debt secured by the deed of trust, and that Klein was insolvent and had nothing but the property on which the deed of trust was given. (See authorities cited by plaintiffs in error on the question that inadequacy of price would not alone invalidate the sale; also Agricultural, Mechanical, and Blood-Stock Association *v.* Brewster, 51 Tex., 257; Atcheson *v.* Hutchison, 51 Tex., 223; Carter *v.* Carter, 5 Tex., 98; Ables *v.* Donley, 8 Tex., 331; Stroud *v.* Springfield, 28 Tex., 676.)

II. The court did not err in instructing the jury on the question of interest, in substance, that the plaintiffs would be entitled to their verdict, although the account may have embraced twelve per cent. interest instead of eight per cent., if from the evidence they believed that the increased interest did not affect the price for which the lot was sold, and had no influence on the price for which it was sold.

1st. The evidence shows that Klein agreed to pay twelve

per cent. interest, and it was competent for him to make such an agreement, so far as interest is concerned.

2d. The conveyance was made to secure the payment of the interest as well as the principal due upon the open account, and it was as competent for Klein to regulate the time when the account for the several purchases would become due, as the amount of the purchase itself; and, in the absence of an itemized account, this court cannot say that the property was sold to pay a debt larger than was actually due.

3d. Even if the proposition made by plaintiffs in error be true, that the deed of trust did not authorize the computation of interest at twelve per cent., and that only eight per cent. should be allowed from the 1st of January, 1876, which will make a difference of $33 in the computation of interest, this will not alone, and of itself, authorize the court in holding that the sale is invalid, and especially when it .is shown that the property did not sell for enough to pay the principal of the debt. (Pridgen v. Hill, 12 Tex., 374; Ricketson v. Richardson, 19 Cal., 350; Richards v. Holmes, 18 How., 146; Jencks v. Alexander, 11 Paige, (N. Y.,) 619; Spencer v. Pierce, 5 R. I., 63.)

III. The charge of the court leaves the question to the jury as to whether Mr. Street, the trustee, had failed or refused to act; and the proposition made by plaintiffs in error is not warranted by the facts, and the finding of the jury will not be disturbed on a question of fact fairly submitted to them.

IV. A. Klein was indebted to Glass at the time the deed of trust was executed. He was also indebted at the time the sale was made. The deed of trust was made to secure the payment of this indebtedness, and said deed of trust is valid and binding on Klein and wife. (Robinson v. Williams, 22 N. Y., 380; Hubbard v. Savage, 8 Conn., 215; United States v. Hooe, 3 Cranch, 73; Walker v. Snediker, 1 Hoff. Ch., 145; Livingstone v. M'Inlay, 16 Johns., 165; Commercial Bank v. Cunningham, 24 Pick., 270; Foster v. Reynolds, 38 Mo., 553.)

BONNER, ASSOCIATE JUSTICE.— It is well settled, that, as

between the parties, if the transaction be *bona fide*, a valid mortgage can be made to secure future advances as well as an existing indebtedness. (Herm. on Chat. Mort., sec. 53, citing numerous authorities in note 2; Robinson *v.* Williams, 22 N. Y., 380.)

Although appellants admit this as a general proposition, they contend that it should not be applied, as against the wife, to a deed of trust upon the homestead for future advances for an unlimited amount to be made to the husband, though she had joined in the mortgage.

If the wife voluntarily, under the solemnities provided by law for her protection, relinquishes her rights, there is no reason, on principle or sound public policy, why she should not, as any other person, be subjected to the consequences. The injury, if any, would be the result of her own voluntary act in the first instance.

Although the law extends its protecting shield over the just rights of a married woman, she should not, more than any one else, be permitted to induce third persons to extend to the husband credit on the faith of her own solemn deed, and then, after they have obtained the benefit of their joint act, repudiate it, to the injury of the third person. (Hartwell *v.* Jackson, 7 Tex., 581; Cravens *v.* Booth, 8 Tex., 248; Bein *v.* Heath, 6 How., (U. S.,) 238; 1 Story's Eq., sec. 385; 1 Greenl. Ev., sec. 207.)

The deed of trust provided, that in the event of the death, inability, refusal, or failure of the original trustee, R. G. Street, to act as such, a substitute trustee could be appointed by the creditor, Glass, without other formality than an appointment and designation in writing.

The testimony showed that trustee Street, for reasons satisfactory to himself, failed, for some months after demand made upon him therefor, to execute the trust, and that when called upon to deliver up the trust deed, so that another appointment could be made, he not only gave it up, but declared his determination not to have executed it unless Glass had paid him for

his services, in addition to the commissions which would have accrued upon the sale.

This, we think, constituted such failure, if not refusal, as authorized the appointment of a substitute trustee by Glass under the terms of the deed of trust.

There was the further issue raised by the testimony, that the failure of Street to execute the trust was also based upon the ground that Glass had not furnished him with an itemized account of the indebtedness due by Klein, and that as this was a reasonable prerequisite to the execution of his trust, there was consequently not such unconditional failure or refusal on the part of Street as authorized the appointment of a substitute trustee.

The charge of the court in general terms covered these issues as presented by the testimony. The court might very properly have gone further, and defined in the charge what, under the circumstances, would in law have been a failure upon the part of Street to act as trustee; and this doubtless was the intention of the second special charge asked by the defendants and refused by the court.

. We do not think, however, that this charge as asked properly presented this point.

If not objectionable in so assuming as to have misled the jury as a fact proven in the case, that the failure of Street to execute the trust was based upon the failure of Glass to furnish the itemized account, it was objectionable in impliedly assuming that this was the sole ground of his failure, when the testimony showed another and a different one.

The defect, if any, in the general charge of the court, was one of omission merely, not, in our opinion, under the circumstances of this case, calculated materially to affect the rights of the defendants, and which was not properly cured by the special charge as asked, rather than an affirmative error.

Unless by the terms of the deed of trust the rate of interest had been restricted to eight per centum, then by agreement of the parties conventional interest as high as twelve per centum

could have been charged, and also could have been calculated from the several dates when the accounts became due.

That interest on open accounts should be charged at eight per centum, and this only from the 1st of January next after the accounts are made, is the rule prescribed by the statute where there is no express or implied agreement of the parties to the contrary. (Paschal's Dig., art. 3940; Pridgen *v.* Hill, 12 Tex., 374.)

It would seem from the testimony that interest in this case was properly allowed in accordance with the previous course of dealing between the parties.

Whether this be so or not, however, the court submitted to the jury the question, whether the sale was affected by the increased rate of interest, and the jury having virtually found that it was not, we are of opinion that the sale should not be set aside on this ground, if in any event a mistake in a calculation of interest would be sufficient for this purpose.

We do not think, under the testimony as presented by the record, that there was any such fraud, irregularity, or unfairness in the sale as would authorize us to set it aside for inadequacy of price.

AFFIRMED.

[Opinion delivered March 12, 1880.]