### CALLOWAY et ux. v. BOOKOUT et al.

### No. 3901.

Court of Civil Appeals of Texas. Texarkana.

March 19, 1931.

Rehearing Denied March 26, 1931.

## SELLERS, J.

Appellants, Calloway and wife, sued appellees, Hubert Bookout and Chas. L. Sanger, alleging that on and prior to the 9th of December, 1926, the property in controversy constituted their homestead upon which they resided; that on said date they signed a deed, which, upon its face and according to its reading and tenor, purported to be a warranty deed, whereby they conveyed said land and premises to E. O. Snead of Dallas, Tex., for the sum of $7,500; "that said instrument was in fact intended by plaintiff, Calloway, to operate only as a mortgage, the same being executed by him upon the following agreement made between him and the said Snead:"

"(a) Plaintiff W. A. Calloway was cashier of the Home State Bank, a corporation, of Howe, Texas, and said bank was indebted to the State Trust & Savings Bank, a corporation, of Dallas, Texas, with which the said E. O. Snead was connected, being vice-president of said bank, and which the said Snead represented in said transaction.

"(b) The said Snead stated to the said W. A. Calloway that if said lands and premises were conveyed to him, the said Snead, that the said State Trust & Savings Bank, of Dallas, Texas, would give the Home State Bank, of Howe, Texas, credit on its books for the sum of Seventy Five Hundred ($7500.00) Dollars, and that the said W. A. Calloway would have the privilege of redeeming said property by the payment of said amount any time within two years after said date. That upon said promise plaintiff W. A. Calloway executed said purported deed as aforesaid. That he never received any consideration personally whatever for said conveyance.

"(c) That the said W. A. Calloway executed said purported deed, and before his wife signed the same the notary public made out his joint certificate of acknowledgment, and affixing his seal thereto, as the same appears upon said purported deed, prior to the time that the said Minnie Calloway signed the same.

"(d) That after the notary had placed his said certificate and seal on said purported deed the said W. A. Calloway took the same to his wife, the said Minnie Calloway, and told her that it was a paper that he desired her to sign in order to help the Home State Bank out of its financial difficulties, or words to that effect, and she thereupon signed said purported deed. That the said W. A. Calloway never explained to the said Minnie Calloway that it was a deed conveying their homestead, or made any further explanation to her other than as above set forth.

"(e) That the said Minnie Calloway never at any time appeared before said notary public, and said notary public did not explain said instrument to her privily and apart from

J. P. Cox and C. Huggins, both of Sherman, and Webster Atwell, of Dallas, for appellants.

Webb & Webb, of Sherman, and Geo. T. Burgess, of Dallas, for appellees.

her husband, and never asked her whether she had willingly signed the same and did not wish to retract it, and said certificate of said notary to said instrument is wholly untrue."

That thereafter, in the month of January, 1927, said E. O. Snead reconveyed the property to Calloway for $2,500 cash and the note of Calloway and wife for $5,000, said deed reserving a vendor's lien to secure said note; that said Calloway paid the $2,500 by his check and executed said note, and on the 26th day of February, 1927, said Calloway and wife executed a deed of trust on the property in controversy to secure the payment of said note; that Minnie Calloway never acknowledged said deed of trust before the notary taking her acknowledgment; that Minnie Calloway never knew the character of either said deed or deed of trust when she signed the same; that the note executed by Calloway and wife to Snead had been transferred to State Trust & Savings Bank, and by it to Hooser and by Hooser to Sanger, and that appellee Bookout had been appointed substitute trustee under the deed of trust and was proceeding to sell the property for the payment of said note; that they asked that Bookout and Sanger be enjoined and that said deed, deed of trust, and note be canceled.

Defendant Snead answered alleging that the sale of the land by Calloway and wife to him was an actual bona fide sale and that he paid the $7,500 recited as the consideration therefor.

Defendant Sanger answered alleging that the deed from Calloway and wife to Snead was, so far as he knew, an actual bona fide sale for the property, for which Snead paid Calloway $7,500, which amount of money was received by Calloway and wife, and that Snead advised him that Hooser was the owner of the note in controversy which was secured by a valid lien on the property, and proposed to convey said note for a tract of land and improvements owned by Sanger in the city of Dallas, Tex.; that Sanger had title to the property in controversy examined and saw of record the deed from Calloway and wife to Snead, same being duly acknowledged of date December 9, 1926, and a deed from Snead and wife to Calloway reciting $4,500 cash and the execution of a note, and that a vendor's lien was retained on the property to secure the payment of the note and the deed of trust and the note, which recites on its face that it is given in part payment for the property in controversy, and signed by Calloway and wife, and the recitals in the transfers from Snead to the bank and from the bank to Hooser that said note was secured by a valid vendor's lien upon said property and given in part payment of the purchase money thereof, and that said Sanger had no knowledge of any of the matters alleged by plaintiffs, or of the vice in the transaction, but

relied upon the recitals in said deed, note, deed of trust, and transfers, and paid for said note relying upon said recitals the sum of $5,000; that if said recitals were false and the facts be as alleged by plaintiffs, Calloway and wife, that said Minnie Calloway had the deed before her and in her possession upon which the certificate of acknowledgment was completely filled in by the notary reciting her appearance before him and her acknowledgment by him of said deed, said Minnie Calloway either knew the certificate of the notary was on the deed before she signed it, or by the use of reasonable diligence could have known, and her husband having advised her that it was a paper he desired her to execute in order to help the Home State Bank, she did know, or by the use of ordinary intelligence and diligence could have known, that same was a deed of conveyance of the property in controversy, and that she knew said deed was to be taken by her husband to be delivered to Snead and that she and her husband received the consideration, and that she took no steps whatever to rescind or cancel said deed and thereafter recognized its validity by accepting a deed from Snead and wife to her and her husband and executing the promissory note in controversy and the deed of trust, and that she had the note and deed of trust before her and either read or could have read the same, and that she appeared before a notary for the purpose of acknowledging said deed of trust; by reason of which fraud practiced by Minnie Calloway she was estopped to say that the recitals in the deed, deed of trust, and note were not true or that the recitals in the acknowledgments were not true or to deny that the indebtedness was not secured by a valid lien upon the property.

And by way of cross-action against State Trust & Savings Bank, Jno. W. Hooser, and E. O. Snead, defendant Sanger pleaded conveyance from Snead to the bank and the bank to Hooser and Hooser to himself, and the recitals in said note, all stating that said note was given in part payment of the purchase money for the land in controversy and secured by a valid vendor's lien thereon, alleging a want of knowledge on his part as to any falsity in any of said statements, his reliance upon the statements in said deed, note, and transfers, his purchase thereof from Hooser and payment of $5,000 for said note, and that if said statements were false, then that Hooser, Snead, and State Trust & Savings Bank had perpetrated a fraud upon him, and prayed for judgment against them for the sum of $5,000 with interest thereon.

The defendants Snead, Hooser, and State Trust & Savings Bank answered, alleging that the recitals in said note and transfers were true and that Snead had paid the consideration in the deed from Calloway and wife to himself.

The case was tried before the court without a jury on the 15th day of November, 1929, all parties appearing in person and by their respective attorneys. All of the evidence was submitted, and upon the conclusion of the evidence the court announced he would take the case under advisement.

On the 28th day of November, 1929, Chas. L. Sanger died.

On the 18th day of December, 1929, upon their application and suggestion of the death of Chas. L. Sanger and that they were his widow and only heirs at law, the court permitted Flora Sanger, Leta Mai Sanger, and Edwin L. Sanger to be substituted as defendants in place of Chas. L. Sanger, the court not, up to that time, having intimated what judgment he would render; that thereafter, on the 18th day of December, 1929, the court entered a judgment that plaintiffs take nothing and that the injunction theretofore granted be dissolved, from which judgment plaintiffs appealed.

■ The first assignment of error complains of the court's refusal to continue the case after the death of defendant Sanger. It appears that Sanger died intestate during the time the court had the case under advisement, and his surviving heirs petitioned the court for an order allowing them to be substituted as parties defendant in the place of the defendant Sanger, which petition was granted by the court and an order to that effect entered before he announced what judgment he would render.

There is no merit in this contention. Article 2080, R. C. S. 1925, expressly authorizes the procedure followed by the court.

■■ The undisputed proof showed that Mrs. Calloway never acknowledged the deed of December 9, 1926, from Calloway and wife to Snead, nor did she go before the notary public for the purpose of acknowledging the same. There is no objection to the court's findings upon these points. As we understand the authorities, a deed to the wife's homestead never acknowledged by her passes no title and is absolutely void, and this is true notwithstanding the notary's certificate of acknowledgment is regular in every respect, and is on the deed at the time the wife signed it. Wheelock v. Cavitt, 91 Tex. 679, 45 S. W. 796, 66 Am. St. Rep. 920. Said deed was wholly void as to Mrs. Calloway and ineffectual as a conveyance even if Snead was an innocent purchaser for value. Lummus et ux. v. Alma State Bank (Tex. Civ. App.) 4 S.W.(2d) 195. The issue of estoppel as raised by the plea of the defendants Sanger avers that:

"Mrs. Calloway had said deed before her and in her possession upon which the certificate of acknowledgment was completely filled in by the Notary, reciting her appearance before him and her acknowledgment by him of said deed and her refusal to retract the same; the said Minnie Calloway either knew said certificate of the notary was on said deed before she signed it, or by the use of reasonable and ordinary diligence could have known and her husband having advised her that it was a paper he desired her to execute in order to relieve the financial distress of the Howe State Bank, she did actually know, or by the use of reasonable and ordinary diligence and intelligence could have known that the same was a deed of conveyance of the property in controversy; that said Minnie Calloway knew that as soon as she signed said deed it was to be taken by her husband to Dallas to be delivered to the grantee therein and said Minnie Calloway thereafter received the whole or the greater part of the consideration recited therein, and having received all of said consideration and knowing, or by the exercise of ordinary prudence could have known that said deed had been delivered to said Snead, and the consideration recited in the face thereof received by her and her husband, took no steps whatever to rescind or cancel said deed, but thereafter recognized its validity by accepting a deed from Snead and wife to her and her husband for the property in controversy, paying the said Snead $2500.00 and executing to said Snead or order their negotiable promissory note, reciting in the face thereof that same was part of the purchase money for said property and was secured by a valid vendor's lien retained in the deed from Snead and wife to her and her husband, and thereafter further ratified the same by executing a deed of trust upon said property to secure the payment of said note; that she had said note and said deed of trust before her and read or could have read the same and with her husband appeared before a notary and acknowledged said deed of trust and knew that her said husband was bringing said deed of trust to Dallas for delivery to said Snead, by reason whereof and the fraud practiced by both of said plaintiffs and especially of said Minnie Calloway the plaintiffs and especially Minnie Calloway are now estopped to say that the said deed, deed of trust and note are not what they purport on their face to be and to deny the recitals therein that said note is a valid indebtedness and secured by a valid and subsisting lien upon said real property."

The defendant Snead testified that all of his negotiations with reference to the trade for plaintiffs' homestead were with Mr. Calloway. Not one time was Mrs. Calloway ever present or say one thing to Snead with reference to the trade. Neither did defendant Sanger, in his negotiations for the note, talk with Mrs. Calloway or her husband. The only evidence explaining the circumstances under which Mrs. Calloway signed the deed to Snead, as well as the note and deed of trust later given to Snead, was by Mrs. Calloway and her husband, and the testimony

of Mr. Calloway in no way conflicts with hers. She testified:

"I signed the paper that Mr. Calloway brought to me along in December, 1926. I signed that instrument at home. I remember the circumstances under which I signed it. I did not have any talk with Mr. Calloway about it; he just asked me to sign some papers that would help the bank. I was in bed sick—I was not well. I signed the paper early in the morning. There was not another word said by Mr. Calloway at the time he asked me to sign the instrument. I did not read over the instrument. I did not know it was a deed to my homestead; if I had known it was a deed to the homestead, I would not have signed it. * * * I did not know that he got $7500.00 on that paper and that $5700.00 went to my account. * * * I remember about the second set of papers. When we were going to my father's we stopped at Mr. McDonough's office. I signed some papers at that time. I signed them at home. My husband, W. A. Calloway, asked me to sign them. At the time I signed those papers, Mr. Calloway said to me practically the same thing he said when I signed the other papers. He said he had some papers he wanted me to sign to help the bank. I did not read either one of those two papers. I did not know one of them, or either of them, was a deed of trust. I did not read the note. I would not have signed them if I had known that."

It is true that Mrs. Calloway some time after signing the note and deed of trust went before a notary public for the purpose of acknowledging the deed of trust, but there is nothing in the testimony of the notary that would indicate he gave Mrs. Calloway any information about Snead's having a deed to her homestead. There is no testimony that she received any of the consideration for the sale of the homestead. Her bank account showed that some of the money was placed to her credit, but her husband testified that he put the money in the bank in her name and checked it out himself.

■ The trial court held that Mrs. Calloway was estopped to claim that she did not acknowledge the deed to Snead without returning the consideration which her husband received from Snead.

■ We do not agree with the court in his conclusion that she would have to return the consideration before she would be entitled to the relief sought. The record discloses very clearly that Mrs. Calloway had the deed to Snead in her hands only long enough to sign it, nor was there anything done or said in her presence by any one that could in the slightest way be construed to cause her to suspect that her husband was selling their homestead to Snead. The rule, which charges one with knowledge of the contents of the instrument which she signs, will not be extended so as to charge the wife, under the circumstances as they appear in this case, with the knowledge of the contents of the deed which she signed. To so hold would have the effect, first, to defeat the very purpose of the statutes which require that a notary explain all of the provisions of a deed by the wife to her homestead, separate and apart from her husband, before taking her acknowledgment; and, second, it would have the effect of causing the wife to lose her homestead by estoppel, when, in fact, she knew nothing of such facts which constituted such estoppel. One of the first essentials of an equitable estoppel is that the false representations must have been made with knowledge of the true facts. It is not that she was charged with knowledge of the true facts, but that she had such knowledge.

■■ Neither do we think that the signing of the note and deed of trust could be given the effect of ratifying the original deed or work an estoppel against Mrs. Calloway. The burden was upon the party alleging estoppel to prove it, and there is no evidence in the record to show that Mrs. Calloway, at the time she signed the note and deed of trust, knew that Snead had a deed to her homestead signed by her. In the absence of such knowledge the execution of the instrument could not be given the effect of estopping Mrs. Calloway to set up the invalidity of the deed to Snead. We think the law of this case is controlled by the case of Yaseen et al. v. Green (Tex. Civ. App.) 140 S. W. 824.

There are other assignments in the record, but the disposition made of this case makes a discussion of them unnecessary.

We are of the opinion that the judgment of the trial court should be modified so as to cancel the vendor's lien and deed of trust lien held by the defendant Sangers, and that plaintiffs W. A. Calloway and wife, Minnie Calloway, be forever quieted in their title to and possession of the land described in the plaintiffs' petition, and, as so modified, the judgment of the trial court will be affirmed.