**SANGER et al. v. CALLOWAY et ux.**

No. 1384—5983.

Commission of Appeals of Texas, Section B.
June 24, 1933.

Webb & Webb, of Sherman, and George T. Burgess, of Dallas, for plaintiffs in error.

J. P. Cox and C. Huggins, both of Sherman,, and Webster Atwell, of Dallas, for defendants in error.

SHORT, Presiding Judge.

Inasmuch as the law of this case depends upon a variety of facts, which the trial court found to be true, and which are not assailed by the Court of Civil Appeals, except in two immaterial particulars, we adopt the statement made in the application for the writ of error as being correct, together with the statement of the facts in the Court of Civil Appeals [37 S.W.(2d) 243]:

"Defendants in error, Calloway and wife, sued plaintiffs in error, Hubert Bookout and Chas. L. Sanger, alleging that on and prior to the 9th of December, 1926, the property in controversy constituted their homestead upon which they resided; that on said date they signed a deed, which, upon its face and according to its reading and tenor, purported to be a warranty deed, whereby they conveyed said land and premises to E. O. Snead of Dallas, Tex., for the sum of $7,500; 'that said instrument was in fact intended by plaintiff, Calloway, to operate only as a mortgage, the same being executed by him upon the following agreement made between him and the said Snead':

" '(a) Plaintiff W. A. Calloway, cashier of the Home State Bank, a corporation of Howe, Texas, and said Bank was indebted to the State Trust & Savings Bank, a corporation of Dallas, Texas, with which the said E. O. Snead was connected, being Vice President of said Bank, and which the said Snead, represented in said transaction.

" '(b) The said Snead stated to the said W. A. Calloway that if said lands and premises were conveyed to him, the said Snead, that the said State Trust & Savings Bank of Dallas, Texas, would give the Home State Bank, of Howe, Texas, credit on its books for the sum of Seventy-Five Hundred ($7,500.00) Dollars, and that the said W. A. Calloway would have the privilege of redeeming said property by the payment of said amount any time within two years after said date. That upon said promise plaintiff W. A. Calloway executed said purported deed as aforesaid. That he never received any consideration personally whatever for said conveyance.

" '(c) That the said W. A. Calloway executed said purported deed, and before his wife signed the same the notary public made out

his joint certificate of acknowledgment, and affixed his seal thereto, as the same appears upon said purported deed, prior to the time that the said Minnie Calloway signed the same.

" '(d) That after the notary had placed his said certificate and seal on said purported deed the said W. A. Calloway took the same to his wife, the said Minnie Calloway, and told her that it was a paper that he desired her to sign in order to help the Home State Bank out of its financial difficulties, or words to that effect, and she thereupon signed said purported deed. That the said W. A. Calloway never explained to the said Minnie Calloway that it was a deed conveying their homestead, or made any further explanation to her other than as above set forth.

" '(e) That the said Minnie Calloway never at any time appeared before said notary public, and said notary public did not explain said instrument to her privily and apart from her husband, and never asked her whether she had willingly signed the same and did not wish to retract it, and said certificate of said notary to said instrument is wholly untrue.'

"That thereafter, in the month of January, 1927, said E. O. Snead reconveyed the property to Calloway for $2,500 cash and the note of Calloway and wife for $5,000, said deed reserving a vendor's lien to secure said note; that said Calloway paid the $2,500 by his check and executed said note, and on the 26th day of February, 1927, said Calloway and wife executed a deed of trust on the property in controversy to secure the payment of said note; that Minnie Calloway never acknowledged said deed of trust before the notary taking her acknowledgment; that Minnie Calloway never knew the character of either said deed or deed of trust when she signed the same; that the note executed by Calloway and wife to Snead had been transferred to State Trust & Savings Bank, and by it to Hooser and by Hooser to Sanger, and that appellee, Bookout, had been appointed substitute-trustee under the deed of trust and was proceeding to sell the property for the payment of said note; that they asked that Bookout and Sanger be enjoined and that said deed, deed of trust and note be canceled.

"Defendant Snead answered alleging that the sale of the land by Calloway and wife to him was an actual bona fide sale and that he paid the $7,500 recited as the consideration therefor.

"Defendant Sanger answered, alleging that the deed from Calloway and wife to Snead was, so far as he knew, an actual bona fide sale for the property, for which Snead paid Calloway $7,500, which amount of money was received by Calloway and wife, and that Snead advised him that Hooser was the owner of the note in controversy which was secured by a valid lien on the property, and

proposed to convey said note for a tract of land and improvements owned by Sanger in the city of Dallas, Tex.; that Sanger had title to the property in controversy examined, and saw of record the deed from Calloway and wife to Snead, same being duly acknowledged of date December 9, 1926, and a deed from Snead and wife to Calloway reciting $4,500 cash and the execution of a note, and that a vendor's lien was retained on the property to secure the payment of the note, and the deed of trust and the note, which recites on its face that it is given in part payment for the property in controversy, and signed by Calloway and wife, and the recitals in the transfers from Snead to the bank and the bank to Hooser that said note was secured by a valid vendor's lien upon said property and given in part payment of the purchase money thereof, and that said Sanger had no knowledge of any of the matters alleged by plaintiffs, or of any vice in the transaction, but relied upon the recitals in said deed, note, deed of trust, and transfers, and paid for said note, relying upon said recitals, the sum of $5,000; that, if all the recitals in said instrument be false, and if the facts be as alleged in plaintiff's petition, then the said Minnie Calloway had full knowledge of all of said facts; that said Minnie Calloway had said deed before her and in her possession upon which the certificate of acknowledgment was completely filled in, the notary reciting her appearance before him and her acknowledgment by him of said deed and her refusal to retract the same; that the said Minnie Calloway either knew said certificate of the notary was on said deed before she signed it, or by the use of reasonable and ordinary diligence could have known, and, her husband having advised her that it was a paper he desired her to execute in order to relieve the financial distress of the Howe State Bank, she did actually know, or by the use of reasonable and ordinary diligence and intelligence could have known, that the same was a deed of conveyance of the property in controversy; that said Minnie Calloway knew that as soon as she signed said deed it was to be taken by her husband to Dallas to be delivered to the grantee therein, and said Minnie Calloway thereafter received the whole or the greater part of the consideration recited therein, and, having received all of said consideration, and knowing, or by the exercise of ordinary prudence could have known, that said deed had been delivered to said Snead, and the consideration recited in the face thereof received by her and her husband, took no steps whatever to rescind or cancel said deed, but thereafter recognized its validity by accepting a deed from Snead and wife to her and her husband for the property in controversy, paying the said Snead $2,500 and executing to said Snead or order their negotiable promissory note, reciting in the face thereof that same was part of the purchase

money for said property and was secured by a valid vendor's lien retained in the deed from Snead and wife to her and her husband, and thereafter further ratified the same by execution of a deed of trust upon said property to secure the payment of said note; that she had said note and said deed of trust before her and read or could have read the same and with her husband appeared before a notary and acknowledged said deed of trust and knew that her·said husband was bringing said deed of trust to Dallas for delivery to said Snead, by reason whereof and.the fraud practiced by both of said plaintiffs, and especially of said Minnie Calloway, the plaintiffs, and especially Minnie Calloway, are now estopped to say that the said deed, deed of trust, and note are not what they purport on their face to be and to deny the recitals therein that said note is a valid indebtedness and secured by a valid and subsisting lien upon said real property.

"And by way of cross-action against State Trust & Savings Bank, Jno. W. Hooser, and E. O. Snead, defendant Sanger pleaded conveyances from Snead to the bank and the bank to Hooser and Hooser to himself, and the recitals in said note, all stating that said note was given in part payment of the purchase money for the land in controversy and secured by a valid vendor's lien thereon, alleging a want of knowledge on his part as to any falsity in any of said statements, his reliance upon the statements in said deed, note, and transfers, his purchase thereof from Hooser and payment to Hooser of $5,000 for said note, and that, if said statements were false, then that Hooser, Snead, and State Trust & Savings Bank had perpetrated a fraud upon him, and prayed for judgment against them for the sum of $5,000, with interest thereon.

"The defendants Snead, Hooser, and State Trust & Savings Bank answered, alleging that the recitals in said note and transfers were true, and that Snead had paid the consideration in the deed from Calloway and wife to himself.

"The cause was tried before the court without a jury on the 15th day of November, 1929, all parties appearing in person and by their respective attorneys. All of the evidence was submitted, and upon the conclusion of the evidence the court announced he would take the case under advisement.

"On the 28th day of November, 1929, Chas. L. Sanger died.

"On the 18th day of December, 1929, upon their application and suggestion of the death of Chas. L. Sanger, and that they were his widow and only heirs at law, the court permitted Flora Sanger, Leta Mai Sanger, and Edwin L. Sanger to be substituted as defendants in place of Chas. L. Sanger, the court not, up to that time, having intimated what judgment he would render; that thereafter, on the 18th day of December, 1929, the court entered a judgment that plaintiffs take nothing, and that the injunction theretofore granted be dissolved, from which judgment plaintiffs appealed, and thereafter perfected their appeal."

The trial court, in effect, found that, under the facts admitted to be true, Mrs. Calloway was estopped from setting up the invalidity of the transaction which was evidenced by the instruments she and her husband sought to cancel, while the Court of Civil Appeals held to the contrary. We have reached the conclusion that the judgment of the trial court was correct.

The material facts previously related may be summarized as follows: On the 9th day of December, 1926, W. A. Calloway and his wife, Minnie, owned a homestead, and on that day they executed a general warranty deed in consideration of $7,500 paid, conveying the property to E. O. Snead. This deed apparently was acknowledged in proper form, but Minnie Calloway did not in fact have any actual knowledge of such acknowledgment. The recitations of the notary of the acknowledgment, however, were on the deed when Mrs. Calloway acknowledged it. On January 20, 1927, E. O. Snead and his wife executed a general warranty deed conveying the property to W. A. Calloway and wife for a recited consideration of $2,500 cash, and the execution of a note for $5,000 payable to the order of Snead, in which the vendor's lien was expressly retained to secure its payment, which was signed by W. A. Calloway and Minnie Calloway, who executed also a deed of trust, duly acknowledged, to Ealy J. Moses, trustee. This note before maturity was purchased without any knowledge of any vice in it by the State Trust & Savings Bank, which afterwards conveyed it to John W. Hooser without any knowledge of any vice in it, who afterwards conveyed it to Charles L. Sanger, who purchased it for value without any knowledge of any vice in it. The trial court held that the property should be made subject to the payment of this note in the hands of the heirs of Charles L. Sanger, while the Court of Civil Appeals held it could not be. As heretofore stated, we think the trial court's judgment is correct, and that the heirs of Charles L. Sanger are entitled to subject the property to the payment of the note, notwithstanding the fact that the property is and always has been the homestead of W. A. Calloway and wife, on the ground of estoppel by negligence in the conduct on the part of the wife, there being no question that the knowledge of the husband that the transaction was a simulated one, and that he was a party to the actual fraud.

At the time Mrs. Calloway signed the deed apparently conveying the homestead to E. O. Snead, the instrument had upon it what purported to be her privy acknowledgment taken before a notary public, but in fact Mrs. Calloway never appeared before a notary pub-

lic, and this recited acknowledgment had no basis in fact. Mrs. Calloway had a substantial interest in this property by reason of the fact it was her homestead, and she was a married woman living with her husband thereon. Article 6605, R. S. 1925, declares that "no acknowledgment of a married woman to any conveyance or other instrument purporting to be executed by her shall be taken, unless she has had the same shown to her, and then and there fully explained by the officer taking the acknowledgment on an examination privily and apart from her husband; nor shall he certify to the same, unless she thereupon acknowledges to such officer that the same is her act and deed, that she has willingly signed the same, and that she wishes not to retract it." By virtue of this article and the admitted facts in the case, the instrument of December 9, 1926, was a nullity, and no rights were acquired by E. O. Snead or any one else thereunder. Wheelock v. Cavitt, 91 Tex. 679, 45 S. W. 796, 66 Am. St. Rep. 920. The rule is that a married woman cannot convey title to her land, including her homestead, except by deed executed upon her private examination made as the law directs. The fact that she may have signed an instrument is of no consequence in and of itself, unless there is connected with and as a part of her signature her voluntary appearance before an officer authorized to take acknowledgments, and there submitting herself to an examination by such officer, whose duty it is made to explain the contents of such instrument to her, and she must thereafter declare to the officer that she had willingly signed the instrument, and that she, at that moment, did not wish to retract it. An instrument not explained to her by the officer at the time of the private examination is not properly acknowledged, even though she in fact understood it from another source.

■ The acknowledgment of Mrs. Minnie Calloway to the deed of trust conveying the property in question to the trustee, who was authorized to sell it, and apply the proceeds of the sale to the payment of the note in controversy, was not only in proper form, but the facts are undisputed that it appeared conclusive from the certificate of the officer taking her acknowledgment that this deed of trust was not only shown to her by such officer, but that he then and there fully explained its contents to her, and that, after having thus been shown to her, and its contents fully explained to her, Mrs. Calloway then and there acknowledged to such officer that she not only had willingly signed the instrument, but that she did not wish to retract it, declaring it to be her act and deed. It may be, as a matter of fact, that Mrs. Minnie Calloway did not know what she was doing when, after having signed the deed of trust, she appeared before the officer taking her acknowledgment, and submitted herself to his jurisdiction; yet the fact remains that the officer certifies such to

have been the case. Had there been any fraud perpetrated upon Mrs. Calloway by the officer, whereby she was misled into doing the things which the officer certifies she did do, it might be that the character of fraud was such that Mrs. Calloway would not have been bound by the declarations of the officer. That question is not before us, and we do not decide it, because there is an utter absence of any claim that any fraud was perpetrated upon Mrs. Calloway in procuring her to go before the officer, and submitting herself to his jurisdiction. Clearly the law required Mrs. Calloway to voluntarily submit herself to the jurisdiction of a notary public or other officer authorized to take acknowledgments in order to give effect to the deed of trust, the recitals of which showed that she had executed a vendor's lien note on her homestead payable to the grantor in the deed, conveying her homestead to her and her husband, and that to secure the payment of this vendor's lien note there was a conveyance by her and her husband of said property to the trustee, who was authorized, on default of the payment of the note, to sell the property on which she was then living and which was then her homestead, and apply the proceeds to the payment of said vendor's lien note. Mrs. Minnie Calloway's own testimony also shows that she remembered to have signed some instrument affecting her homestead some few weeks previous. These recitations in this deed of trust clearly showed the purpose of its execution. Where the separate acknowledgment of a married woman is necessary to give effect to a deed of trust, and she appeared before a notary public for the purpose of making such acknowledgment, the certificate of the notary, in conformity to the statute, is conclusive of the facts therein stated as against an innocent holder of the note for value. Adkins-Polk Co. v. Rhodes et ux. (Tex. Com. App.) 24 S.W.(2d) 351, 353.

In the case cited, Presiding Judge Harvey of the Commission of Appeals states the facts as follows: "The deed of trust in controversy was executed by Rhodes and his wife before a notary public of their own selection. The notary did not read or explain the deed of trust to Mrs. Rhodes, when he took her acknowledgment to same. As a matter of fact, Mrs. Rhodes did not read the instrument, and did not understand all of its provisions. The notary, however, attached to the instrument his certificate of the acknowledgment of Mrs. Rhodes, which certificate is in regular statutory form. After this, the deed of trust was delivered by Rhodes to the company. The company was without notice that the notary had not explained the deed of trust to Mrs. Rhodes, and was without notice that Mrs. Rhodes did not fully understand the contents of the instrument when she signed it. Nor was the company privy to any fraud or imposition perpetrated on Mrs. Rhodes in connection with the execution of

the instrument. In April, 1926, Rhodes made an assignment of all his property, for the benefit of his creditors, in accordance with the provisions of our state statutes on that subject, and discontinued said grocery business. Shortly afterwards, Rhodes and the president of the Adkins-Polk Company agreed to an extension of time of payment of the note in controversy, which note had matured under the accelerating clause hereinabove mentioned. By this agreement the time of payment of the note was extended to November 1, 1926. Mrs. Rhodes was not party or privy to this agreement, and did not consent to such extension."

And then proceeds to declare the law as follows: "The Court of Civil Appeals erroneously held that the deed of trust in controversy is invalid on account of the failure of the notary to explain the instrument to Mrs. Rhodes when she signed and acknowledged it. The certificate of the notary shows on its face that all statutory requirements were met in taking the acknowledgment of Mrs. Rhodes to the instrument. The rule is firmly established that, as against one who, innocently and for a valuable consideration given therefor by him, becomes the holder of a mortgage which requires the separate acknowledgment of a married woman to give it effect, and the latter has appeared before a notary for the purpose of making such acknowledgment, the certificate of the notary, in conformity to the statute, is conclusive of the facts stated in the certificate. Hartley v. Frosh, 6 Tex. 215, 55 Am. Dec. 772; Shelby v. Burtis, 18 Tex. 645; Pool v. Chase, 46 Tex. 210; Waltee v. Weaver, 57 Tex. 571; Davis v. Kennedy, 58 Tex. 516; Wheelock v. Cavitt, 91 Tex. 679, 45 S. W. 796, 66 Am. St. Rep. 920."

The provisions of article 6605, supra, are sufficiently effective to protect Mrs. Calloway from the consequences of her act in executing and delivering the instrument dated December 9, 1926, notwithstanding, at the time she signed and delivered this instrument, it was written thereon, as a part of it, her privy acknowledgment of its execution in due form. This article of the statutes, as well as several others, indicates that it is the policy of this state to protect a married woman from the consequences of her acts in the execution of instruments by her, which purport to convey property in which she has an interest. A purported conveyance by a married woman, which in fact has not been executed in accordance with the solemnity prescribed by the statutes, is a nullity, and is not a subject for equitable reformation by the courts; the office of such a proceeding being only to correct the written evidence of the contract between the parties so as to conform to the real contract as actually made. The exercise by the courts of such a power in no way impairs the rights of mar-

ried women, nor does it violate any principle of law or equity, but on the contrary tends to promote the ends of justice and to discourage and prevent fraud. Speer's Law of Marital Rights in Texas (2d Ed.) par. 243. Nor have the courts the power to give vitality to acts which the law has declared to be void. Since the case of Inge & Boring v. Cain, 65 Tex. 75, the opinion of which was written by Associate Justice Robertson, and handed down on November 27, 1885, it has been the declared law of this state, after the adoption of the Constitution of 1876, that "no mortgage, trust deed, or other lien on the homestead, shall ever be valid." Section 50, art. 16, General Provisions. Judge Robertson, in construing this provision of the Constitution, declared that "what cannot 'ever be valid,' is never valid, and what is never valid, is always void." So we conclude that the Court of Civil Appeals was correct in that part of the opinion, wherein it declared "that neither the signing of the note or deed of trust could be given the effect to ratify the original deed against Mrs. Calloway," but we think the court fell into an error in declaring that this act of Mrs. Calloway could not work an estoppel against her. Accepting as correct, as we must, the findings of fact by the trial court, which were approved by the Court of Civil Appeals, in excluding the findings which were not approved by said court, which we think were immaterial, we are of the opinion that these facts are sufficient to estop Mrs. Calloway from claiming that the payment of this $5,000 note in the hands of an innocent purchaser could not be enforced, according to the terms of the deed of trust, which she and her husband executed; and which she executed in fact according to the forms prescribed by the law, and in which it was solemnly declared by the officer taking her acknowledgment that this deed of trust had been fully explained to her after she had voluntarily submitted herself to his jurisdiction, and that, after having received this explanation, she then declared that she had executed it for the purposes therein expressed, and that she did not wish to retract it. While the law has been jealous in guarding the execution by the wife of instruments affecting the title to her homestead, and also of her separate property, yet it has been equally jealous in protecting the rights of innocent purchasers of written instruments apparently creating valid obligations against others, including married women. In Boswell v. Pannell, 107 Tex. 433, 180 S. W. 593, 597, the Supreme Court said: "But it has been held by this court in the case of Link v. Page, 72 Tex. 596, 10 S. W. 699, that ' * * * where the owner of real property negligently clothes another with the apparent title to it, although the execution of the instrument which purports to convey the title may be obtained by fraud, and third parties, being misled thereby, innocently pur-

chase and pay value for the property, he should be held estopped to deny the validity of the conveyance.' See, also, Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; Tyler B. & Loan Association v. Beard & Scales, 106 Tex. 554, 171 S. W. 1122, 1200."

In Heidenheimer v. Stewart, 65 Tex. 321, the Supreme Court, among other things, said: "The equities between the original parties to a mortgage cannot avail a mortgagor in a suit on the secured negotiable note to foreclose the mortgage * * * even if it results in the encumbrance of the homestead, if those entitled to the exemption have caused this result by their own deliberate fraud. Hurt v. Cooper, 63 Tex. 362. If the owners of the homestead simulate a transaction, in which a negotiable note would be secured by a valid and meritorious lien on the exempt estate, and their artifice succeeds in imposing upon an innocent party, they are estopped from denying the truth of their solemn statements, and cannot be permitted to prove that a lien their acts declared to be valid is void because their acts were false." As said by the court in the case of Guaranty Bond State Bank v. Kelley (Tex. Com. App.) 13 S.W.(2d) 69, 71: "It was suggested in the arguments that Mrs. Kelley could not be estopped by anything short of an actual fraud affirmatively committed by her, and it is argued that the fraud of the husband, who consummated the deal with the bank, could not be imputed to her. The principles thus contended for are sound; but that fraud which will estop a married woman is not necessarily intentional fraud, but rather any intentional affirmative act of hers which operates as a legal fraud, whether so intended or not, will estop her. Here Mrs. Kelley contributed in an active, affirmative way, to the perpetration of a legal fraud. Her intentions may have been, and no doubt were, perfectly harmless and with no actual purpose to wrong any one. But in law her conduct amounted to an affirmative representation that she and her husband had, in good faith, conveyed the homestead and reserved the lien thus assigned to the bank. To permit her now to plead the invalidity of the transaction would be to permit a legal fraud. Having actual notice of the execution of the deed retaining the lien, the measure of plaintiff in error's diligence was complete, and it was under no obligation to make further inquiry of defendants in error. It is ill-becoming defendants in error to insist that the bank, to whom they have thus represented that a sale of their home has been made, should make further inquiry of them or either of them if the transaction had been in good faith. The bank had a right to rely upon the truth of the facts thus represented to it."

The Court of Civil Appeals, in its opinion, held that Mrs. Calloway was not estopped by the facts which the trial court found and which it approved, and, after quoting the testimony of Mrs. Calloway, says: "It is true that Mrs. Calloway, sometime after signing the note and deed of trust, went before a notary public for the purpose of acknowledging the deed of trust, but there is nothing in the testimony of the notary that would indicate he gave Mrs. Calloway any information about Snead having a deed to her homestead. There is no testimony that she received any of the consideration for the sale of the homestead. Her bank account showed that some of the money was placed to her credit but her husband testified that he put the money in the bank in her name and checked it out himself." As we have heretofore stated, this execution of the instrument apparently conveying her homestead to Snead, by Mrs. Calloway, is shown to have been an absolute nullity, and, had the testimony further showed that Mrs. Calloway had received the consideration, which Snead is recited to have paid to her, we do not think the law of the case could be changed, nor could she be estopped, as against any person having knowledge of the facts, from successfully pleading the nullity of this instrument.

We further hold that the fact that she afterwards executed the note in question, and also executed and duly acknowledged the deed of trust given to secure the payment of this note, could not have the legal effect to ratify her act in apparently selling her property to Snead, because, as said by Judge Robertson in Inge & Boring v. Cain, supra, "what cannot 'ever be valid,' is never valid, and what is never valid, is always void." The defendants in error alleged in their petition that Snead conveyed the property to Calloway and wife, in the month of January, 1927, for $2,500 in cash, and the execution and delivery of the $5,000 note, and that Calloway and wife executed a deed of trust on the property, which was duly acknowledged before a notary public, reciting the fact that said $5,000 note was secured by a deed of trust on the property in question, and that Snead, in whose favor the note was executed, had transferred it to the State Trust & Savings Bank, and the bank had transferred it to Hooser, and Hooser had transferred it to Sanger, and that a substitute trustee had been appointed, who was made a defendant with Sanger, Hooser, the bank, and Snead. The trial court found all these facts to be true, and the Court of Civil Appeals approved them, but because the notary public did not explain to Mrs. Calloway the fact that she had apparently previously acknowledged an instrument conveying the property in controversy to Snead, the Court of Civil Appeals holds that she was not estopped by the above findings of fact. We disagree with the Court of Civil Appeals in this holding, in view of the findings of fact by the trial court, which were approved by the Court of Civil Appeals. The law on this particular point is stated in Corpus Juris, vol. 21, p. 1169,

as follows: "A recognized proposition as to estoppel in pais is that if in the transaction itself, which is in dispute, a party has led another into the belief of a certain state of facts by conduct of culpable negligence calculated to have that result, and such culpable negligence has been the proximate cause of leading, and has led, the other to act by mistake upon such belief to his prejudice, he cannot be heard afterward as against that other to show that the state of facts referred to did not exist. Since in order to create an equitable estoppel it is not necessary that there should be an intentional moral wrong, negligence, when there is a duty cast upon a person to disclose the truth, may supply the place of intent, where the effect of such negligence is to work a fraud on the party setting up the estoppel." Cravens v. Booth, 8 Tex. 247, 58 Am. Dec. 112; Klein v. Glass, 53 Tex. 44; Eylar v. Eylar, 60 Tex. 315; Ramirez v. Smith, 94 Tex. 184, 59 S. W. 258; Hurt v. Cooper, supra; Heidenheimer v. Stewart, supra; Love v. Breedlove, 75 Tex. 652, 13 S. W. 222; National Bond & Mortgage Corp. v. Sam Davis et al. (Tex. Com. App.) 60 S.W. (2d) 429; First Texas Joint Stock Land Bank v. Chapman (Tex. Civ. App.) 48 S.W.(2d) 651.

We hold that the facts which the Court of Civil Appeals approved as being the facts found by the trial court, as a matter of law, estopped Mrs. Calloway from claiming that her act in signing the instrument dated December 9, 1926, and her act in signing the deed of trust dated January 20, 1927, were not what they purported to be as against the rights of an innocent purchaser of a promissory note for $5,000 described in the deed of trust.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the trial court be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.