## W. S. BIRDWELL V. D. C. BURLESON ET AL.

Decided December 17, 1902.

**1.—Homestead—Title Merely Possessory.**

Property rightfully and peaceably held in possession and occupied as the home of the family, should be held exempt from forced sale, though that possession be merely permissive.

**2.—Same—Case Stated.**

A husband occupying, with his minor children, a homestead on property of his deceased wife, and having inherited from one of the children, on its death, a small, undivided interest in the land, temporarily removed therefrom to educate the children; afterwards the land was partitioned, the residence tract being set aside to one of the children; they having no guardian, he rented out the land and used the proceeds for the support of himself and family, intending to return with them and live in the home; afterwards he inherited half the tract of another child, who died. Held, that his interest in this and in the tract partitioned to him were protected from levy and sale on execution against him.

**3.—Homestead—Assignable Interest.**

The interest of one claiming the homestead exemption need not be such as is capable of assignment.

Appeal from the District Court of Hays. Tried below before Hon. L. W. Moore.

*Will G. Barber* and *P. N. Springer,* for appellant.

*O. T. Brown,* for appellees.

STREETMAN, ASSOCIATE JUSTICE.—Appellant brought this suit to recover one tract of 20 83-100 acres of land, and an undivided half interest in a tract of 32 3-4 acres. Upon trial, without a jury, the District Court rendered judgment for appellee.

We find the facts necessary to a decision of the case, as follows:

The land in controversy was part of a tract of 236 acres, formerly owned by Martha J. Weir. Mrs. Weir by her will gave the 236 acres to her daughter, Louisa Burleson, wife of appellee, for her life, with remainder to her children, in equal shares. Mrs. Louisa Burleson died March 18th, 1894, and left surviving her husband (appellee) and eight children: Cornelia, Joseph, Sallie, Martha J., Stephen, Lou, Lizzie, and Mary.

Prior to the death of Louisa Burleson, she and her husband and children resided on said tract of 236 acres, using the entire tract as a homestead. After her death, appellee and the children continued to occupy and use the tract in the same manner.

In July, 1894, Joseph Burleson died, unmarried, intestate and without issue, and appellee inherited from him an undivided one-sixteenth of said 236 acres. In October, 1894, appellee, with his minor children, moved to the town of Buda, about 2 1-2 miles from the land for the purpose of sending the children to school.

Up to this time all of the interests were undivided, but in 1896, some of the elder children threatened to sue for partition, and appellee caused a partition suit to be instituted in the name of Martha J. Burleson; and on September 23, 1896, a decree was rendered, making partition of the land. It was divided into eight lots or tracts, and allotted to the several owners in the manner shown by the following sketch:

```
┌─────────────────────────┐
│            1            │
│        31 acres         │
│    Armstrong Minors.    │
├─────────────────────────┤
│            2            │
│        31 acres         │
│    Cornelia A. Cole.    │
├─────────────────────────┤
│            3            │
│        31 acres         │
│   Martha J. Burleson.   │
├─────────────────────────┤
│            4            │
│        31 acres         │
│   Stephen M. Burleson.  │
├─────────────────────────┤
│            5            │
│      32 3-4 acres       │
│     Lou Burleson.       │
├─────────────────────────┤
│┌─┐         6            │
││ │      Dwelling        │
│└─┘    25 1-2 acres      │
│     Mary Burleson.      │
├─────────────────────────┤
│            7            │
│      32 3-4 acres       │
│    Lizzie Burleson.     │
├─────────────────────────┤
│            8            │
│     20 83-100 acres     │
│     D. C. Burleson.     │
└─────────────────────────┘
```

By this decree lot No. 8, containing 20 83-100 acres, was set apart to appellee, and he was divested of all right, title and interest in the remainder of the 236 acres. The dwelling house and all outhouses were situated on lot No. 6, which was set apart to Mary Burleson, the youngest child. Stephen, Lou, Mary, and Lizzie were at that time minors, and their father D. C. Burleson continued to rent their parts and his together, and used the rents for the support of the family.

On December 28, 1896, Lou Burleson died, unmarried, intestate, and without issue, and appellee inherited from her an undivided half interest in lot 5. Appellee continued to live with the remaining minor children at Buda until the trial of this case. He continued to exercise the control and management of their part of the land, renting it together with his own, and using the rents all alike for the support of the family. It was his intention all the time when he had finished sending the children to school, to return to the farm and live in the house on lot 6, using the other tracts in connection with it as a homestead for the family. If the children should marry and he could no longer live in the house on lot 6, it was his intention to exchange his part of lot 5 for land adjoining lot 8, and live there. At the time of the partition, parts of lots 5 and 8 were in cultivation. After that no further improvement was made on either lot.

The children have never had a guardian of their persons or estates. Appellee never acquired any other homestead.

On December 3, 1897, D. M. Reagan obtained a judgment in a justice court in Hays County against D. C. Burleson for $72. On December 14, 1897, an abstract of said judgment was duly recorded and indexed in Hays County. May 6, 1898, an execution was issued on said judgment, which was levied on lot 8, and an undivided half of lot 5, and on June 7, 1898, said lot 8 and half of lot 5 were regularly sold under said execution to appellant W. S. Birdwell for $25, and a proper conveyance of said land was executed and delivered to him by the sheriff.

Upon these facts the District Court rendered judgment for appellee. There are no findings of fact or law in the record, but the judgment necessarily involves the finding that both tracts of land were exempt as homestead, and the only question presented on this appeal is whether such finding was warranted by the facts.

Appellant contends that whatever homestead rights appellee had in the 236 acres prior to the partition were, by that decree, limited to the tract allotted to him, and designated as lot 8; and that decree, together with his removal to the town of Buda, operated as an abandonment of all the rest of the tract. He maintains that the undivided half interest in lot 5, being acquired afterwards, while appellee was not residing on the tract, and there being no evidence of acts of preparation to use it as a homestead, it never became impressed with the homestead character.

As to lot 8, it is insisted that by the decree and the removal of appellee, he had divested himself of all interest in lot 6, on which the dwelling was situated, and as there was no dwelling on lot 8 or lot 5, and appellee did not intend to build a dwelling on either of said lots, his intention to return and occupy the house on lot 6, if permitted to do so, was not sufficient to preserve the homestead character of lot 8.

Appellant relies upon the case of Franklin v. Coffee, 18 Texas, 413, and others which hold that it is not two hundred acres of land belonging to the head of the family which is exempt, but the homestead, and that there must be a homestead over which the Constitution may throw its shield, and not land, merely, upon which the owner may or may not put his cabin, mansion, or improvements.

As bearing more particularly on the interest in lot 5, appellant cites the case of Brooks v. Chatham, 57 Texas, 31, and others, which hold that where land is acquired, a mere intention on the part of the owner is not sufficient to make it his homestead, but that such intention must be evidenced by acts of preparation to use it as a hoemstead.

If we should agree that the facts showed a complete abandonment of lot 6, upon which the dwelling and outhouses were situated, so that appellee could have no homestead rights in it, then these questions would become important in the decision of the case. It therefore becomes necessary to determine the nature and extent of appellee's rights at the time of the levy and sale in lots 6 and 5. It can not be doubted that, prior to his removal from the premises and before the partition, he had an undivided interest in the whole 236 acres, and that this was exempt as a homestead (Luhn v. Stone, 65 Texas, 439; Clements v. Lacy, 51 Texas, 639); nor can it be claimed that his removal to the neighboring village to educate his children, with the intention of returning to occupy the place, operated as an abandonment. Thomas v. Williams, 50 Texas, 269; Aultman v. Allen, 12 Texas Civ. App., 227.

The decree of partition giving him lot 8 as his entire share and divesting him of all title and interest in the remainder, presents the serious question. After this decree, what were his rights, as far as lots 5 and 6

were concerned? They became the property of his two minor children, who were part of his family, and who had no guardian of their persons or estates. As their father and natural guardian, he took the actual management and control of the premises, rented them out together with his own lot, and used the proceeds as a fund for the support of the family. By his tenants, he was thus in actual possession and control of the premises. We do not see that his position was in any respect different from what it would have been had he never removed from the premises, but continued to reside there and partition had been made during such residence.

The question thus presented has not been decided by the courts of our State, so far as our investigation has discovered. Briefly stated, the question is, whether a father, residing with his minor children upon land, the legal title to which is entirely in the children, and managing and controlling such land and using the proceeds for the support of himself and the family, has such interest in the land as will form the basis of a homestead exemption.

It is true that he has no legal title to the land. If some one else were appointed guardian, he could be entirely ousted from the occupancy of the premises. Yet, he is in possession, and his possession is in nowise unlawful or wrongful. On the other hand, it is just what we should expect a father, under the circumstances, to do. He can not be said to be an intruder or bare trespasser. We think it must be conceded, under such circumstances, that he is in actual, peaceable and lawful possession of the premises. Assuming that he occupies this relation to the property, while there are no decisions of our own State upon the question, the courts of other States have directly passed upon it.

. The statutes of Mississippi exempt from forced sale the homestead "owned and occupied as a residence," not to exceed eighty acres.

In the case of King v. Sturges, 56 Mississippi, 606, the plaintiff in error claimed that a forty-acre tract which had been sold under execution was exempt as homestead. There was no house on it, but he dwelt in a house built on high land belonging to the railroad company, immediately adjoining it; and this house was distant from his own line less than three hundred yards. This was the condition of affairs when he purchased, and his vendor had built the house and so occupied it and the land for several years previous to his purchase. He was a man of family, owned no other land than this, and cultivated and derived his subsistence from it. In determining whether it was exempt or not, Associate Justice Chalmers, of the Supreme Court, says: "Eighty acres are by law exempt, provided they are actually occupied as a homestead. In this instance, if we connect with his own tract the railroad land occupied by him, he will still have less than eighty acres. What the nature of his tenure of the railroad land is, does not appear, nor is it perhaps material, since any right in the land actually occupied as a homestead will support a claim to exemption. In this instance the occupancy seems to have continued for several years, and to have been acquired with the title to

the forty-acre tract. We must conclude that it is permissive on the part of the railroad company, and constitutes at least a tenancy at will; so that plaintiff in error may be regarded as actually occupying as a homestead a tract in solido of eighty acres or less, as to a portion of which he is owner in fee, and as to the remainder, a tenant at will, or perhaps from year to year. Inasmuch as any interest or tenure, save that of a mere intruder or trespasser, will support a right of exemption, we conclude that plaintiff in error was, within the meaning of the statute, in such actual possession of the locus in quo as to constitute it his homestead."

In Pendleton v. Hooper, 87 Ga., 108, Chief Justice Bleckley, in delivering the opinion of the Supreme Court upon almost the precise question under investigation, said:

"The premises in controversy consist of six acres. Hooper was in possession when the judgment against him was rendered, and has remained in possession ever since. He parted with the paper title by a voluntary conveyance made to several persons, some of them minors, on the day the judgment was rendered, and at an hour subsequent to its rendition. The lien of the judgment was made neither better nor worse by this conveyance. Had he parted also with possession and never resumed the same, his ownership of the property would have been at an end; but as he retained possession, he is still the owner against all the world, except his donees. They may choose never to disturb him or assert any title against him. That possession of land imports ownership, is familiar law. (Citing 2 Black. Com., 196; English v. Register, 7 Ga., 391.) Naked possession is the lowest and most imperfect degree of title, but it is nevertheless enough to hold off creditors, where exemption is claimed under section 2040 of the code, and where the terms prescribed in section 2041 are complied with. Here there was a compliance with these terms pending the levy, and whilst Hooper was in possession.

"It is not disputed that he was the head of a family, or that he would be entitled to the exemption if he had not divested himself of all title except possession. But he retained the very thing which the law of exemption is solicitous to protect. It cares not how little the debtor may have, so long as he remains in its actual enjoyment. The exempt land is 'for the use and benefit of the family of the debtor,' so says the code. The exemption does not depend on the quality or duration of the estate which the debtor has in the land. A tenancy at will or at sufferance will protect it from levy and sale as his property, equally with an estate in fee simple. The exemption attached to the land, not merely to his estate in it. Our exemption laws do not cut up exempt property into divers estates, but protect the physical thing as a whole from levy and sale, so long as the exemption continues. * * * Even were he a trespasser relatively to his donees, he would, whilst in possession, be owner relatively to his creditors."

Quotations might be multiplied from other courts to show that mere possession of land with no greater title is sufficient interest to support the homestead exemption. The question is discussed in the following

cases, in addition to those above mentioned: Watson v. Saxor, 102 Ill., 585; Hogan v. Mannus, 23 Kan., 551; McGrath v. Sinclair, 55 Miss., 89.

As we have stated above, our courts have not been called on to decide whether mere possession, without other title, will support the homestead exemption.

In Wahrmund v. Merritt, 60 Texas, 24, it is said that one occupying land only as a tenant could not claim the homestead exemption, but in that case the right was attempted to be asserted against the landlord.

In Williams v. Withered, 37 Texas, 130, it is said that a mere tenant at will could not claim a homestead in the land occupied by him, but even if this decision is to be taken as authority, the question does not seem to have been necessary to the determination of that case, as the parties appear to have really acquired homestead rights in other property.

A question very similar to this was suggested but not answered by Chief Justice James, of the Court of Civil Appeals, Fourth District, in Anderson v. Carter, 5 Texas Ct. Rep., 501.

While some expressions of the Court of Civil Appeals in Hampton v. Gilliland, 23 Texas Civ. App., 87, might indicate that the court did not believe a tenancy at will would support the homestead exemption, yet in that case the homestead right was not asserted against creditors, but was claimed by a surviving wife against other heirs.

These cases indicate more strongly than any others we have examined a leaning against the homestead claim based upon mere possession. On the other hand, the benefit of the exemption has been extended by our courts to various cases which in principle, so far as we can see, are not different from this case.

In Cullers v. James, 66 Texas, 494, a house was held exempt as the home of the family or place of business, although the owner had no interest or estate in the land on which it stood. It is said: "If he occupies it with his family, it is their home. He may be compelled to move it from one lot to another, as fast as legal process can oust him; still, though ambulatory, unsatisfactory, and in all its appointments mean; though it advertises the thriftless poverty of its proprietors and is a caricature of the princely possibility of the exemption laws, it is the home of a family, and is embraced in the spirit and purpose, if not the letter of the Constitution." See also Luck v. Zapp, 1 Texas Civ. App., 528.

It has been held that a homestead may exist in an estate for life (Silverman v. Landrum, 56 S. W. Rep., 107), a leasehold interest (Wheatley v. Griffin, 60 Texas, 209; Phillips v. Warner, 16 S. W. Rep., 423; Brewing Association v. Smith, 26 S. W. Rep., 94; Moore v. Greer, 5 Texas Ct. Rep., 482), or an equitable interest (Lee v. Wilbourne, 71 Texas, 500).

Bearing in mind the liberal policy which should prevail in the construction of our exemption laws, we believe that where property is rightfully and peaceably held in possession, and occupied as the home of the family, it should be exempt from forced sale, even though that possession be merely permissive.

We therefore conclude that, after the partition of the 236 acres, appellee D. C. Burleson, under the facts, had such possession of lot 6, on which the dwelling was situated, and also of lot 5, set apart to Lou Burleson, as, considered in connection with the former use of the premises, and his future intentions, made it, in law, his homestead. Having, therefore, such interest in the dwelling as would authorize 'him to claim it as a home, it follows that he could claim lot 8 set apart tò him, as land adjacent to the dwelling and used for homestead purposes.

It also follows that, having already an interest in lot 5 sufficient to make it a homestead, the exemption would not be defeated but rather strengthened by his inheritance of an undivided half interest in this lot upon the death of his daughter, Lou Burleson.

We therefore conclude that there was no error of the lower court in holding both tracts in controversy exempt as homestead, and the judgment of the District Court is affirmed.

*Affirmed.*

### OPINION ON MOTION FOR REHEARING.

Appellant has filed a motion for rehearing, supported by a very able argument. The principal proposition contended for in the motion and argument is that a homestead, under the Constitution and laws of Texas, can not exist in favor of one who does not own some assignable interest in the land. As the principal reason for this proposition, it is insisted that without such assignable interest a creditor who levied upon the homestead could acquire nothing by his execution sale, and there could be no reason for protecting from forced sale an estate which needed no protection. The conclusion that we are asked to deduce from these propositions is, that a homestead can not exist based upon a mere possession of land, whether under a tenancy at will, or by sufferance or otherwise, without some legal title.

It is not to be denied that this line of reasoning has been followed by some courts; and there are expressions in some of the opinions of our courts of civil appeals which indicate similar views. See Roberts v. Trout, 35 S. W. Rep., 323; Hampton v. Gilliland, 23 Texas Civ. App., 87; Loessin v. Washington, 23 Texas Civ. App., 515. But we do not believe the decision of the question involved in this case was necessary to a determination of any of the cases cited; and if so, we are unable to agree that in a contest with a creditor, it is necessary that the debtor should own an assignable interest in the land in order to assert homestead rights.

If we are to follow the decisions of our Supreme Court, the contrary conclusion is inevitable. Numerous decisions are to the effect that a homestead may be asserted in a leasehold estate (60 Texas, 209; 16 S. W. Rep., 423; 26 S. W. Rep., 94; 5 Texas Ct. Rep., 482); and we think this question in this State may be considered as settled. Yet it is equally well settled that a leasehold estate, under our law, is not assignable, and can not be sold under execution, and by our Supreme Court

is put upon exactly the same footing, with respect to its assignability, as a tenancy by sufferance or at will. Moser v. Tucker, 26 S. W. Rep., 1044.

It is also decided that a homestead may exist in a house situated upon land to which the head of the family has no title or interest whatever, and that it is embraced in the spirit and purpose, if not the letter, of the Constitution. Cullers v. James, 66 Texas, 494.

An examination of the cases which uphold a homestead interest in leasehold estates and the authorities upon which they are based, disclose the fact that it is not simply a sale of the homestead estate which is inhibited by the Constitution, but that it prohibits any interference by judicial process with the possession of the premises. Upon this theory alone can the decision of Judge Gaines in Coates v. Caldwell, 71 Texas, 22, be upheld, and the decision is expressly put upon that basis. In that case creditors levied upon matured crops grown upon the homestead. They were no longer part of the realty, and there was no law exempting them from forced sale. The homestead itself was not sought to be subjected to execution. But the execution was unlawful, because its enforcement would interfere with the possession of the homestead.

It follows from this that when there is such possession of premises as would be interfered with by the enforcement of judicial process, the Constitution will protect such possession. Upon this theory alone can the decisions be sustained which protect from forced sale crops, either growing or matured, upon leased premises; and from this proposition it follows that whether the tenancy be for a term of months or years or simply at will or sufferance, if there be an actual, peaceable, rightful possession of the premises which would be disturbed by the execution of judicial process, such possession is sufficient to support a homestead exemption.

For example, if in this case Burleson, having just such possession and title as he did, instead of cultivating the farm by tenants, had planted a crop himself for the support of himself and family, and appellant had levied upon it, we think it can hardly be doubted that he could have defeated the execution because it interfered with his possession of the homestead.

We are thus forced to the conclusion that an assignable interest in the land is not necessary as a basis for homestead rights; but, as held in the original opinion, the exemption may be asserted by one who, not being an intruder or trespasser, is in the actual, peaceable possession and control of the premises.

It is urged that this doctrine must lead to unreasonable results, in illustration of which several questions are suggested. Among others, it is asked whether, if Burleson should remarry, a conveyance by himself and wife with separate acknowledgment would be necessary to divest him of his homestead estate. Certainly not. The Constitution and statutes provide that a sale and conveyance of the homestead must be made by the husband and wife; but they do not provide that a home-

stead may not exist in property for which no written conveyance is necessary, as a leasehold for less than twelve months, or a house which is really personal property, as in Cullers v. James (cited above) ; and in such case no written conveyance by husband and wife can be required. So where land is simply held by sufferance or at will, the possession may be terminated by the owner of the property or by the act of the tenant in moving off the premises. They have no interest that could be assigned, and, of course, no conveyance by either husband or wife would be necessary to divest them of their possession; but it by no means follows that they can not, so long as they remain in possession, assert their homestead rights.

All the other questions suggested are really involved in the one inquiry, whether an assignable interest is necessary to support the homestead exemption. In view of the decisions in our State, as well as the policy which has prevailed and ought to prevail in the construction of our Constitution and laws upon this subject, we are unable to reach any other conclusion than that announced in our original opinion.

The motion for rehearing is therefore overruled.

*Overruled.*

Opinion delivered March 4, 1903.

Writ of error refused.