Ivory CHARLTON et ux., Appellants,

v.

The RICHARD GILL COMPANY,
Appellee.

No. 12916.

Court of Civil Appeals of Texas.
San Antonio.

Dec. 28, 1955.

H. M. Bellinger, San Antonio, for appellants.

Houston & Thompson, Russell S. Ponder, San Antonio, for appellee.

POPE, Justice.

Appellee, as an innocent purchaser for value and without notice, sued and recovered judgment against Ivory Charlton and his wife, Alma Charlton, for the amount due on a note and for the foreclosure of a builder's and mechanic's lien and deed of

trust upon the Charlton homestead. The Charltons defended on the grounds that they did not acknowledge the instruments, and that they were void even in the hands of the innocent purchaser. The Charltons do not attack the judgment on the promissory note.

The Charltons, on the evening of March 2, 1954, discussed with a Mr. Reneau the matter of some improvement on their homestead. He typed certain instruments on a typewriter at the Charlton home and they signed a note for $1,657.44, and the lien and deed of trust. Reneau was not a notary public. Mrs. Margarita Suarez, a notary public, testified that Reneau called her on the evening of March 2, 1954, told her that he would introduce Mr. and Mrs. Charlton by telephone, and that he wanted her to take their acknowledgments. The notary had never talked to nor known the Charltons before, never saw them until she saw them in the courtroom after trial commenced, and testified that she had no way to know that the persons with whom she talked were the Charltons, except by relying upon Reneau's introduction by telephone. Reneau was not available as a witness. The most that could possibly be proved by the evidence is that the Charltons undertook to acknowledge the instruments by telephone. The notary's certificate was in proper form.

■ Most of the legal questions in this case have been settled by Humble Oil & Refining Co. v. Downey, 143 Tex. 171, 183 S.W.2d 426, 430. That case discusses the absolute necessity for the separate acknowledgment of a married woman in the manner required by statute in order to effect a valid conveyance of a married woman's separate property, and states: "A deed not separately acknowledged conveys nothing. It is the acknowledgment, not the signature, that constitutes the execution of a married woman's deed." The same rule applies in the case of improvements to a homestead. The wife's separate acknowledgment is necessary. Art. 16, § 50, Tex.Const., Vernon's Ann.St., Arts. 1300, 3839, 6605, 6608,

Vernon's Ann.Civ.Stats.; Sanger v. Calloway, Tex.Com.App., 61 S.W.2d 988; Stallings v. Hullum, 89 Tex. 431, 35 S.W. 2; Cates v. Greene, Tex.Civ.App., 114 S.W.2d 592; Capitol Bldg. & Loan Ass'n of Texas v. Sosa, Tex.Civ.App., 72 S.W.2d 936. The statutes require the notary to explain the instrument to the wife, examine the wife apart from her husband, and have the wife acknowledge to the notary that she willingly signed the instrument and that she does not wish to retract it. Until those things are done there is no valid instrument by the wife. The rule is the same even with respect to an innocent purchaser for value. Humble Oil & Refining Co. v. Downey, supra; Hill v. Wright, Tex.Civ.App., 30 S.W. 2d 812; Lummus v. Alma State Bank, Tex. Civ.App., 4 S.W.2d 195.

■ This case is controlled by the statutes concerning acknowledgments. A wife's personal appearance before the notary who purports to take her acknowledgment to a conveyance of her homestead is necessary to the validity of the instrument. Article 6608, Vernon's Ann.Civ.Stats., sets forth those matters which must be substantially certified by the notary in a married woman's acknowledgment. Identity of the signatory, explanation, private examination, a willing signature, and an opportunity to retract the signature are the safeguards that are spelled out in detail. Article 6605 repeats these elements and declares that the officer is the one who shall make the full explanation while the wife is examined privily and apart from her husband. It states that the officer must show her the instrument. Article 1300 declares that the family homestead may not be sold or conveyed unless the mode prescribed in Articles 6605 and 6608 is followed. The wisdom of those statutes, thus clearly stated, is not for us to determine. We observe, however, that since the decision in Humble Oil & Refining Co. v. Downey, supra, in 1944, the Legislature has convened five times and has made no change in the statutes. Whatever may be the assaults upon the acknowledgment statutes, that they are ambiguous is not one of them.

■ The argument is made that the telephone conversation invoked the powers of the notary, which is enough to breathe life into the instruments. It is conceivable that the notary can make explanation by telephone, but a notary must also be in a position to know and certify that the wife is examined privately and apart from her husband, that she willingly signs the instrument, and that she willingly declines to retract her signature. These matters require the wife to be in the presence of the notary. Knowledge of the identity of the wife is required by Article 6608, when it declares that the certificate must show that the person "personally appeared" before the notary. The words "personally appeared" are simple and have a common meaning. The temptation to construe them out of the statute comes only from hard cases which arise when persons push the law beyond its meaning. The notary in this case is unable to identify either Mr. or Mrs. Charlton. To do so she must rely upon a telephone introduction by Mr. Reneau, who is unavailable. If Mrs. Charlton was privily and apart from her husband while her acknowledgment was taken, there is no way that the notary knew it or could prove it. Whether the wife willingly signed the instruments, or under threats manifested at the other end of the telephone conversation, the notary could not know. No intimation of those matters is present and we are confident they did not occur, but we mention them to demonstrate that a notary's official acts as expressed by legislation are not insignificant formalities which may be smiled out of the law. If a famous actor or artist should advertise that he would personally appear at a concert on a given date, and then should in fact perform for the audience by telephone, that audience would have no difficulty in concluding that the performer had not "personally ap-

peared." A notary can no more perform by telephone those notarial acts which require a personal appearance than a dentist can pull a tooth by telephone. If a telephone conversation is a personal appearance, we may suppose that a letter or telegram to a notary would also be as good or maybe even better.

This opinion holds contrary to the language found in Timmins v. Independent Lumber Co., Tex.Civ.App., 7 S.W.2d 130, and Humble Oil & Refining Co. v. Davis, Tex.Civ.App., 282 S.W. 930. Neither case, however, examined the words of the statute. Breitling v. Chester, 88 Tex. 586, 32 S.W. 527, 528, states: "In order to call into exercise the authority of the officer to make the certificate, the grantor must appear before him for the purpose of acknowledging the instrument." Humble Oil & Refining Co. v. Downey, citing many cases, makes a clear distinction between cases where a person appears "in person" before an officer who makes a faulty acknowledgment and cases where a person fails to appear at all. Wheelock v. Cavitt, 91 Tex. 679, 45 S.W. 796, 797, holds the same way.

A majority of American jurisdictions hold that telephone acknowledgments are invalid. Am.Jur., Acknowledgments, § 69; Notes, 12 A.L.R. 538; 29 A.L.R. 919, 1018; 58 A.L.R. 604; 25 A.L.R.2d 1124, 1166; 1 C.J.S., Acknowledgments, § 68; 7 Thompson, Real Property (Perm.Ed.) § 4067.

■ We conclude that a married woman's acknowledgment taken by telephone is void. There is no appeal from the judgment on the note. The judgment of the trial court will be reversed and rendered denying appellee relief with reference to the foreclosure of its lien.

Reversed and rendered.