**O. H. SULLIVAN et ux., Petitioners,**

v.

**Pearl BARNETT et al., Respondents.**

**No. B–2431.**

Supreme Court of Texas.

June 23, 1971.

Rehearing Denied July 28, 1971.

A. R. Archer, Jr., Monahans, for petitioners.

J. M. Preston, Pecos, for respondents.

DANIEL, Justice.

Plaintiffs, O. H. Sullivan and wife, instituted this suit on August 14, 1968, to re-form a deed dated January 25, 1956, a deed of trust dated January 15, 1959, and a 1962 trustee's deed thereunder, in so far as these instruments relate to 240 acres in Ward County alleged to have been included in such instruments by mutual mistake; for cancellation of a separate deed to one-fourth of the minerals on 40 acres alleged to have been obtained by fraud; and for removal of clouds cast upon plaintiffs' title. Plaintiffs alleged that, in any event, the 1956 deed and 1959 deed of trust were void as to 200 acres of the land because it was their homestead and Mrs. Sullivan did not appear before a notary public and separately acknowledge the 1956 deed, and because the 1959 deed of trust was not given to secure any type of debt for which a valid lien could be placed on a homestead.

The 1956 deed to J. S. Witt and D. F. Ross covered one-half interest in 26 numbered "water tracts" subdivided and platted by the Pioneer Canal Company. The 1959 deed of trust in favor of W. M. Barnett, signed by Witt, Ross, and the Sullivans, covered these and 25 other similar "water tracts" or lots. The area comprised of this total of 51 "water tracts," generally referred to in oral testimony as the "Cox Place", was located about three-quarters of a mile distant from six other forty-acre "water tracts," generally referred to in oral testimony as the "Sullivan homestead." The latter six tract numbers were included in the instruments by mutual mistake, and they comprise the area in controversy. All descriptions were by subdivision tract and block numbers only, with no metes and bounds and no reference to the general descriptions used in the oral testimony.

It was alleged that the six homestead tracts were inadvertently included in the 1956 deed as the result of a scrivener's error and that this mistake was repeated in subsequent deeds of trust, including the 1959 deed of trust and the trustee's deed to W. M. Barnett. This mutual mistake was conclusively established by testimony or evidence of statements and actions of all

of the above named parties to the instruments. J. S. Witt and the widow of D. F. Ross were included as defendants, but they made no contest. Witt testified in favor of plaintiffs. The only contesting defendants were the widow and niece of W. M. Barnett, deceased.

Based upon jury findings favorable to the plaintiffs on seven special issues and undisputed evidence on other issues, the trial court rendered judgment reforming the instruments in so far as they pertain to the entire 240 acres and removing the clouds cast upon plaintiffs' title by these instruments and by a gift deed from W. M. Barnett to his niece, Mrs. Anita V. Head, covering one-fourth of the minerals on the 240 acres. It also cancelled the separate deed from plaintiffs to Barnett covering one-fourth of the minerals on 40 acres of the land in controversy. An appeal was taken by the widow and niece of Barnett, respondents, who are hereinafter referred to as defendants.

The Court of Civil Appeals did not pass upon the substantive issues, concluding that the plaintiffs could not recover on the homestead claim because they failed to ask for and obtain a jury finding that the land constituted their homestead on the relevant dates; that they were barred by the four-year statute of limitations from having the mutual mistakes corrected and the clouds removed from their title; and that the findings of the jury do not support the cancellation of the separate mineral deed to one-fourth of the minerals on the 40 acre tract. Tex.Civ.App., 458 S.W.2d 850. We disagree with the holdings and the judgment of the Court of Civil Appeals and approve the judgment of the trial court in so far as they relate to all of the

property and instruments except the separate deed to one-fourth of the minerals on 40 acres out of water tracts 3 and 4 in Section 201, Block 34. As to the latter, we agree with the Court of Civil Appeals that plaintiffs were not entitled to cancellation of this mineral deed and hold that the trial court's judgment should be modified accordingly. In order that the trial court may enter a judgment modified in accordance with this opinion, we reverse the judgments below and remand the case to the trial court.

### The Homestead 200 Acres

Because of the controlling effect which we give to plaintiffs' continued occupancy and use of the land, both on the homestead and mutual mistake issues, we shall discuss this phase of the case first. After purchasing the six forty-acre "water tracts" in controversy (less one-half of the minerals) from Judge Henry Russell in 1951, plaintiff, O. H. Sullivan, included them in a homestead designation which he filed in the Deed Records of Ward County, on November 30, 1954.[1] It is undisputed that since that time plaintiffs have lived in the home situated on this land, maintained and claimed it as their homestead, kept the entire area under fence, raised livestock thereon, farmed portions themselves, and leased other portions to be farmed by tenants. This was established not only by their own testimony but by disinterested witnesses. This actual use as a homestead in 1956 and thereafter, and the fact that these six "water tracts" were not intended to be included in the 1956 deed and the 1959 deed of trust, were known to all of the grantees in the instruments, including W. M. Barnett, who purchased under the trustee's sale in 1962.

1. The homestead designation, following the same tract and section numbers as in the deed from Russell to Sullivan, described the property as follows:
 "Water Tracts Nos. Three (3) and Four (4) out of Section Two Hundred One (201); Water Tracts Nos. Seven (7) and Six (6) out of Section One Hundred Eighty-four (184); and Water Tracts Nos. One (1) and Two (2) out of Section Two Hundred Two (202); all in Block No. Thirty-four (34) of the H. & T. C. Railway Company Survey in Ward County, Texas; each of the water tracts above described containing 40 acres of land."

 Defendant's only challenge to this homestead status is by way of argument, first made on motion for instructed verdict, that plaintiffs had abandoned their homestead claim by an attempted sale of the property to W. C. Scott on February 5, 1955. It is true that plaintiffs executed a deed to Scott covering the homestead tracts and other lands in 1955. However, Scott was unable to make the first payment due December 20, 1955, and he reconveyed the land to plaintiffs on January 25, 1956. In the meantime, plaintiffs had continued to live on the land and use it as their homestead. There was no abandonment in law or in fact. They never agreed or intended to move unless and until Scott made the first payment. It has been held that the rural homestead rights protected by Article 16, Section 50 of the Constitution of Texas, Vernon's Ann.St., may attach to property held under lease or at the will of the record owners. Davis v. Lund, 41 S.W.2d 57, (Tex.Com.App.1931, holding approved); Young v. Hollingsworth, 16 S.W.2d 844, (Tex.Civ.App., 1929, writ ref.); Beckner v. Barrett, 81 S.W.2d 719 (Tex.Civ.App., 1935, writ dism.); Birdwell v. Burleson, 31 Tex.Civ.App. 31, 72 S.W. 446 (1902, writ ref.). An intention or attempt to sell a homestead does not amount to an abandonment as long as the homestead claimants retain possession and have no intent to abandon unless the sale materializes. McDaniell v. Ragsdale, 71 Tex. 23, 8 S.W. 625 (1888); Gaar, Scott & Co. v. Burge, 49 Tex.Civ.App. 599, 110 S.W. 181 (1908, writ ref.); American National Bank of Austin v. Cruger, 31 Tex.Civ.App. 17, 71 S.W. 784 (1902, writ ref.).

 When homestead rights are once shown to exist in property, they are presumed to continue, and anyone asserting an abandonment has the burden of proving it by competent evidence. Rancho Oil Co. v. Powell, 142 Tex. 63, 175 S.W.2d 960 (1943); Burkhardt v. Lieberman, 138 Tex. 409, 159 S.W.2d 847 (1942); Moorhouse v. Crew, 273 S.W.2d 654 (Tex.Civ.App., 1954, writ ref.). The party claiming abandonment must plead it and carry the burden of proving it. Postal Savings & Loan Ass'n v. Powell, 47 S.W.2d 343 (Tex.Civ.App., 1931, writ ref.); Huss v. Wells, 17 Tex. Civ.App. 195, 44 S.W. 33 (1897, writ ref.). Defendants here failed to plead abandonment and did not ask for the submission of any issue on that question.

Plaintiffs not only possessed and claimed the land as their homestead but had record title thereto on January 25, 1956, when their deed was made to J. S. Witt and D. F. Ross covering one-half interest in all or portions of 26 numbered water tracts, in which the scrivener also inadvertently included the six tract numbers in controversy. One of the grantees, J. S. Witt testified that he and his deceased partner, D. F. Ross, did not intend to buy the six "homestead" tracts; that they did not pay for them; that they were included in the deed by mutual mistake; that neither he nor Ross ever claimed the plaintiffs' homestead tracts; and that they always recognized them as belonging to and constituting the homestead of the plaintiffs. He also testified that W. M. Barnett, their subsequent grantee and beneficiary under subsequent deeds of trust, including the 1959 deed of trust, knew that these homestead lots were not intended to have been included in any of the series of instruments which began with the 1956 deed, because Barnett loaned Witt and Ross the money to buy the interest in the 26 tracts from plaintiffs and personally inspected the land which was being purchased and immediately pledged to Barnett; that such inspection did not include the six tract numbers which comprise the 240 acres in controversy. Witt also testified that Mrs. Sullivan did not appear before the notary who purportedly took her acknowledgment to this deed; that the acknowledgment was filled out in advance and that he, Witt, subsequently took the deed to Mrs. Sullivan and obtained her signature. The jury found in answer to Special Issue No. 7 that Mrs. Sullivan did not appear before the notary.

■ Article 16, Section 50, of the Constitution of Texas and the statutes in effect on the dates of the instruments in controversy (Articles 1300, 4618, 6605 and 6608, Vernon's Ann.Tex.Civ.St.) required not only the consent of the wife to the sale of a homestead, but that she appear personally before the notarizing officer and acknowledge her signature separately and apart from her husband. In view of Mrs. Sullivan's failure to do this, the deed of January 25, 1956, was ineffectual and passed no title as to the 200 acres designated in the trial court's judgment as the portion which constituted the homestead, so long as plaintiffs continued to occupy and claim it as their homestead.[2] Cleveland v. Milner, 141 Tex. 120, 170 S.W.2d 472 (1943); Sanger v. Calloway, 61 S.W.2d 988 (Tex. Com.App., 1933, jdgt. adopted); Robertson v. Vernon, 3 S.W.2d 573 (Tex.Civ. App., 1927), affirmed by the Texas Commission of Appeals in 12 S.W.2d 991 (1929); Cosgrove v. Nelson, 269 S.W. 891 (Tex.Civ.App., 1925), affirmed 277 S.W. 1118 (Tex.Com.App., 1925, jdgt. adopted); Charlton v. Richard Gill Co., 285 S.W.2d 801 (Tex.Civ.App., 1955, n. w. h.). See also Humble Oil & Refining Company v. Downey, 143 Tex. 171, 183 S.W.2d 426 (1944).

■ The other crucial document under consideration, the deed of trust signed by the plaintiffs and by Witt and Ross, and their wives, on January 15, 1959, in favor of W. M. Barnett, covering 51 numbered water tracts, repeated the earlier error and again included by mutual mistake the six tract numbers which comprise the land in controversy. The grantors, Witt, Ross and Sullivan, were conducting farming operations together on the other lands described in the Deed of Trust, and it was executed to secure a $90,000.00 loan from Barnett. As to that portion of the tracts which constituted 200 acres of the Sullivan homestead tract, the deed of trust and subsequent trustee's deed to Barnett were void and passed no title, because the deed of trust was not given for one of the three excepted purposes set forth in the Texas Constitution with respect to homesteads. Article 16, Section 50, Constitution of Texas; Burkhardt v. Lieberman, 138 Tex. 409, 159 S.W.2d 847 (1942); Toler v. Fertitta, 67 S.W.2d 229 (Tex.Com.App., 1934, jdgt. adopted); Inge and Boring v. Cain, 65 Tex. 75 (1881).

■ Defendants contend, and the Court of Civil Appeals held, that the trial court's judgment for plaintiffs even as to the 200 acres of the homestead tract was erroneous because no issue was submitted to the jury on whether the land constituted the plaintiffs' homestead on the relevant dates. As heretofore stated, this fact was conclusively shown by the evidence. There was no evidence to the contrary. Without objection from defendants, six of the seven special issues submitted to the jury specifically identify and inquire about the land in controversy as plaintiffs' "homestead" or "homestead property." Submission of an issue on an undisputed fact is unnecessary. Rule 272, Rules of Civil Procedure; Wright v. Vernon Compress Co., 156 Tex. 474, 296 S.W.2d 517, 522–523 (1956). This was specifically held with reference to a homestead in a suit to cancel a mineral deed in Coats v. Stewart, 135 S.W.2d 1026 (Tex.Civ.App.1939, writ dism., judg. cor.).

### Mutual Mistake and Reformation

As to the 40 acres mistakenly included in the instruments in excess of the constitutionally protected rural homestead (SE/2 of Tracts No. 6 and No. 7), plaintiffs necessarily rely upon their contention that equitable right and title to the entire 240 acres remained in them by reason of their

2. The 200 acres recited in the trial court's judgment as the portion selected by plaintiffs out of the 240 acres for homestead rights was comprised of the same water tract numbers that were set forth in the homestead designation of 1954 and copied in footnote 1 above, except the southeast ½ (SE/2) of Water Tracts No. 6 and No. 7.

continued possession of and dominion over the property and grantees' conduct recognizing their ownership as though the 240 acres had never been included in the 1956 deed and the 1959 deed of trust. Plaintiffs contend, and the trial court held, that the jury findings and undisputed facts entitle them to reformation of the instruments and the quieting of their title to all of the six numbered tracts which comprise the 240 acres generally referred to throughout the trial and in the special issues as their "homestead" property.

The defendants do not dispute, and neither did their predecessor W. M. Barnett dispute, the fact that this land was included in the instruments by mutual mistake. Their only defense is that they should be allowed to keep the portion of the 240 acres which Barnett failed to reconvey to plaintiffs because the action by plaintiffs to quiet their title and reform the instruments is barred by the four-year statute of limitation. Article 5529, V.A.T.S. The Court of Civil Appeals so held, basing its decision solely upon a rule frequently stated by intermediate courts that a grantor is charged with knowledge of the contents of his deed from the date of its execution, and that limitation begins to run on such date against any action to correct it. The Court of Civil Appeals relied principally on the decisions most often cited for this rule, Kahanek v. Kahanek, 192 S.W.2d 174 (Tex.Civ.App., 1946, n. w. h.) and Kennedy v. Brown, 113 S.W.2d 1018 (Tex.Civ. App., 1938, writ dism.). However, equity and justice being the ultimate aims of all rules of law, this and other courts have not been so rigid in their application of this rule. Numerous exceptions are as well established as the rule itself. As shown by the cases hereinafter cited, this presumption that a grantor or grantee has immedi-

ate knowledge of a mutual mistake contained in a deed is rebuttable, and there are various circumstances, such as subsequent conduct of the parties as though the deed had not contained the error, which will excuse a delay in discovery of the mutual mistake. This Court has never permitted the rule to blindfold it to the true facts concerning actual discovery of the mutual mistake and subsequent conduct of the parties with respect thereto.

The weight of authority is that once the presumption of immediate knowledge is rebutted, the statute of limitation will commence to run when the mutual mistake was, or in the exercise of reasonable diligence should have been, discovered. See McClung v. Lawrence, 430 S.W.2d 179 (Tex.Sup.1968), involving reformation of an alleged mutual mistake in the legal effect of a royalty reservation made nearly 16 years prior to filing suit, in which this Court reversed a court of civil appeals decision based upon the *Kahanek* and *Kennedy* decisions;[3] Miles v. Martin, 159 Tex. 336, 321 S.W.2d 62 (1959), in which this Court remanded for "a trial of grantor's right to equitable relief of reformation" because of possible mutual mistake in the legal effect of the royalty reservation in a deed executed almost six years prior to filing suit; Gilmore v. O'Neil, 107 Tex. 18, 173 S.W. 203 (1915), approving reformation of a deed which conveyed 1.35 acres instead of the intended 1⅔ acres in suit filed five years after the date of the deed; Clopton v. Cecil, 234 S.W.2d 251 (Tex. Civ.App., 1950, writ ref. n. r. e., cited with approval on this point in Miles v. Martin, supra), in which a royalty deed whose decimal description covered 1.86 royalty acres instead of the intended 18.6 acres was reformed in a suit filed 10 years after the date of deed; Texas Osage, etc. v. Garcia,

3. The Supreme Court distinguished the *McClung* facts from those in *Kahanek* and *Kennedy*, and we find no decision by this Court citing either of those cases with approval or following the rule stated by them on this point. The holding in *Kahanek* was dicta, since in that case there was a finding of actual knowledge of the mutual mistake by grantor more than four years prior to suit. The *Kennedy* decision clearly recognizes an exception to the rule when the grantor is lulled into a sense of security by subsequent acts of the grantee.

176 S.W.2d 798 (Tex.Civ.App., 1943, writ ref. w. m., also cited with approval in Miles v. Martin, supra) affirming reformation of a grantor's deed made 11 years before suit on account of a mutual mistake in the amount of mineral acres conveyed; Hutchins v. Birdsong, 258 S.W.2d 218 (Tex.Civ.App., 1953, writ ref. n. r. e.), in which a grantor's deed omitting an intended mineral reservation was reformed in a suit filed 12 years after date of the deed; Luginbyhl v. Thompson, 11 S.W.2d 380 (Tex.Civ.App., 1928, writ dism.), in which a grantor's deed omitting an intended mineral reservation was reformed in a suit filed more than six years after date of the deed; and Marshall v. Hutchinson, 358 S. W.2d 675 (Tex.Civ.App., 1962, n. w. h.), affirming reformation of a grantor's deed which conveyed all of a tract instead of an undivided half interest in a suit filed six years after the date of deed.

See also Sims v. Haggard, 162 Tex. 307, 346 S.W.2d 110 (1961), in which the judgment of the trial court was modified to reform two deeds executed 11 years prior to institution of suit, because there was a mutual mistake conveying more acreage than intended; Ramsey v. McKamey, 137 Tex. 91, 152 S.W.2d 322 (1941), in which it was held that reformation of a partition decree because of mutual mistake was not barred by a 23 year delay in discovering the error, where rights of third parties had not intervened; and Riggs v. Polk, 3 Tex.Civ.App. 179, 21 S.W. 1013 (Tex.Civ.App., 1893, n. w. h.), in which it was held that grantors' action to correct mutual mistake in a series of deeds describing more acreage than intended was not barred by stale demand even though made over a period of 30 years prior to suit, when conduct of all grantees recognized that deeds covered only the tract intended.

Six of the seven court of civil appeals opinions cited by the El Paso Court of Civil Appeals (458 S.W.2d at 852) in support of its rigid adherence to the rule charging plaintiffs with knowledge on the date of their deed, and commencing the running of the statute of limitation on that date, recognize that there are exceptions to the rule, especially where the party claiming advantage of the statute had recognized the ownership of the party seeking reformation as though the mistake had not been made, thus "lulling him into a sense of security" and excusing his delay in actually discovering the mistake.

■ In the present case, there is evidence to support the findings of the jury that plaintiffs did not discover the erroneous inclusion of the tract numbers which constituted their "homestead" 240 acres in the 1956 deed more than four years prior to the filing of this suit and that they did not fail to use due diligence in discovering same. Further, it is undisputed that plaintiffs first learned that the mutual mistake had been repeated in the 1959 deed of trust after being informed of same in 1962 by W. M. Barnett and Barnett's attorney. Plaintiffs were assured by Barnett that the mistake would be corrected after the trustee's sale in 1962. With this assurance, Barnett asked plaintiff, J. H. Sullivan, to attend the sale, and thereafter proposed that the Sullivans convey him one-fourth of the minerals on 40 acres of the land in consideration for Barnett clearing up the mistake by reconveying the 240 acres to plaintiffs. This was agreed to. Plaintiffs delivered the mineral deed on the 40 acres and Barnett assured them that his attorney had prepared the reconveyance of the remainder. Plaintiffs testified they did not see it but completely trusted their friend Barnett and believed that it had been accomplished. Mr. Sullivan had a stroke and other serious illnesses which incapacitated him during this period. It was not until 1966, two years before filing this suit, that plaintiffs learned that Barnett had reconveyed to them the legal title only to forty acres (NW/2 of Water Tracts 3 and 4 of Section 201) and one-half interest in the remainder of the 240 acres. In the meantime, the evidence heretofore recited shows that the plaintiffs had no reason to doubt the representations of Barnett that he had

reconveyed all of the land to them, because they continued to live on the land and exercise dominion over it with the knowledge of Barnett, and he never brought to their attention or notice that he was claiming any interest in the property other than the one-fourth of the minerals which they had conveyed him on 40 acres.

Under these circumstances, the undisputed evidence concerning the mutual mistake, and the jury finding that the failure of W. M. Barnett to convey all of the "homestead property" back to them was for the purpose of defrauding plaintiffs, plaintiffs contend that any legal title held by Barnett at the time of his death by reason of the 1959 deed of trust and 1962 trustee's deed was impressed with a constructive trust for their benefit as the rightful owners and holders of the equitable title. In support of this point they cite Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471 (1945); Carl v. Settegast, 237 S.W. 238 (Tex.Com.App. 1922, jdgt. adopted); and Biggs v. Poling, 134 S.W.2d 801 (Tex.Civ.App.1939, writ dism., jdgt. cor.). See also Miles v. Martin, 159 Tex. 336, 321 S.W.2d 62, 67 (1959); Hall v. Miller, 147 S.W.2d 266 (Tex.Civ.App.1941, writ dism., jdgt. cor.); and Restatement on Restitution § 163. Because of our disposition of this phase of the case on other points, it is unnecessary for us to pass on this point.

■ That portion of the trial court's judgment with which we agree is supported by an established rule of law applicable to grantors who remain in possession of land which was inadvertently included in a deed by mutual mistake. As long as no rights of bona fide innocent purchasers have intervened, actions or defenses by such persons in peaceable possession based upon mutual mistakes in deeds and removal of clouds from title are not barred by the four-year statute of limitation. Strong v. Garrett, 148 Tex. 265, 224 S.W.2d 471 (1949); State Mortgage Corp. v. Ludwig, 121 Tex. 268, 48 S.W.2d 950 (1932); Terry v. Baskin, 44 S.W.2d 929 (Tex.Com. App., 1932, holding approved); Gilmore v.

O'Neil, 107 Tex. 18, 173 S.W. 203 (1915); Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304 (1923). See also the following cases cited with approval by the Supreme Court in the *Ludwig* case, supra: Reese v. Granau, 27 S.W.2d 591 (Tex.Civ.App., 1930, writ dism.); Luker v. Anderson, 10 S.W.2d 149 (Tex.Civ.App., 1928, n. w. h.); Pannell v. Askew, 143 S.W. 364 (Tex.Civ. App., 1912); and the following cases cited with approval by the Court in Strong v. Garrett, supra: Howard v. Young, 210 S. W.2d 241 (Tex.Civ.App., 1948, writ ref. n. r. e.); Payne v. Ross, 10 Tex.Civ.App. 419, 30 S.W. 670 (Tex.Civ.App., 1895, n. w. h.). We recognize that there was a contrary holding in Cleveland State Bank v. Gardner, 286 S.W. 173 (Tex.Com.App., 1926, holding approved). However, as to this point it has been overruled, implicitly at least, by the subsequent holdings of this Court cited above, and it is now explicitly overruled.

### One-fourth Mineral Deed on 40 Acre Tract

■ The rules stated above do not apply to the deed from plaintiffs to W. M. Barnett dated March 1, 1962, covering one-fourth of the minerals on the 40 acres described as the NW/2 of Water Tracts 3 and 4 of Section 201, which plaintiffs sought to cancel because of the alleged fraud of Barnett in failing to reconvey to them all of the remainder of the 240 acres. This involved no mutual mistake. Plaintiffs intentionally and knowingly severed and conveyed these minerals to Barnett. Whether or not it was a good bargain, plaintiffs agreed to deed these minerals to Barnett in exchange for a deed from Barnett to them removing the clouds cast on their title by reason of the void deeds held by him on their constitutionally protected 200 acres and by reason of the legal title which he held to the 40 acres in excess of the constitutional rural homestead.

Any fraud on the part of Barnett was not in obtaining the mineral deed on the 40 acres but in failing to execute the deed to

**48**

plaintiffs covering the remainder of the 240 acres. The findings of the jury related to this failure. Barnett partially performed by conveying them all of the NW/2 of tracts 3 and 4 of Section 201 and one-half of the remainder of the land. Upon oral argument in this Court, counsel for defendants disclaimed any interest in the surface estate and authorized this Court to enter judgment accordingly. The trial court's judgment accomplished this and all else that Barnett had left undone. We agree with the Court of Civil Appeals, that the findings of the jury do not support the trial court's judgment cancelling the deed to one-fourth of the minerals on the 40 acre tract and reforming the subsequent gift deed from W. M. Barnett to his niece, Anita Head, and her husband, Joe Head, in so far as it covers one-fourth of the minerals on this particular 40 acres.

For the reasons stated, we reverse the judgments of the courts below and remand this case to the trial court in order that its judgment may be modified in accordance with this opinion.