

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00849-CV

**MCJAM, INC.,**
Appellant

v.

**CD AUTO SERVICE, INC.,**
Appellee

From the County Court at Law No. 3, Bexar County, Texas
Trial Court No. 2015-CV-04322
Honorable David J. Rodriguez, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: December 5, 2018

REVERSED AND RENDERED

CD Auto Service, Inc., filed a suit on an open account against MCJAM, Inc. After a jury trial, the trial court entered judgment against MCJAM for $68,724.13 in accordance with the jury's damages finding. On appeal, MCJAM presents three issues. In its third issue, MCJAM argues the trial court's judgment must be reversed because CD Auto's sole ground of recovery was not submitted to the jury. We sustain MCJAM's third issue, and reverse and render judgment that CD Auto take nothing on its claim.

BACKGROUND

The appellant, MCJAM, is a towing company. The appellee, CD Auto, services and repairs motor vehicles. MCJAM provided towing services to CD Auto's customers, and CD Auto serviced and repaired vehicles owned by MCJAM.

CD Auto filed a suit on an open account against MCJAM. In its petition, CD Auto alleged that it had serviced and repaired MCJAM's vehicles with the charges being maintained on an open account, that MCJAM had failed to make required payments on the account, that the principal balance owed on the account was $97,478.22, and that MCJAM was entitled to a credit of $28,005.44 for its towing services. CD Auto's position was that it had provided vehicle services to MCJAM on a cash basis, and that MCJAM owed it the outstanding balance on the account.

MCJAM answered the suit, denying the allegations in the suit and raising several defenses. MCJAM's position was that it did not owe CD Auto any money because MCJAM and CD Auto had a barter agreement which required only an exchange of services.

The case was tried to a jury. The evidence consisted of account records maintained by both CD Auto and MCJAM, and testimony from two witnesses.

CD Auto's account records listed unpaid invoices and amounts due from MCJAM and another towing company between January 2010 and August 2013.[1] MCJAM's account records, which reference CD Auto, list invoices, dates, open balances, and amounts between March 2012 and August 2013.

Carlos Terrazas testified on CD Auto's behalf. According to Terrazas, MCJAM towed vehicles to CD Auto's shop when its customers' vehicles needed service or repair. CD Auto charged customers for MCJAM's towing services but retained the funds collected and credited

---

[1]MCJAM acquired this towing company's assets in 2012.

them to MCJAM's account. When MCJAM's vehicles needed service or repair, CD Auto performed services or repairs on MCJAM's vehicles. CD Auto prepared an invoice for every vehicle MCJAM brought in for service or repair. The invoices included the date, invoice number, the vehicle number or license plate, all the items that were replaced and repaired, and the cost of the services. CD Auto also sent monthly statements to its customers on all its open accounts. After unsuccessful attempts to have MCJAM pay the balance on its account, CD Auto stopped performing repair work on MCJAM's vehicles.

Christopher J. Morales testified on MCJAM'S behalf. According to Morales, the arrangement between MCJAM and CD Auto was a barter agreement, that is, CD Auto performed services or repairs on MCJAM's vehicles, and MCJAM provided towing for CD Auto's customers. CD Auto charged each customer $55.00 per tow, and then credited the $55.00 to MCJAM's account. CD Auto and MCJAM never exchanged money. MCJAM never received a check from CD Auto, and MCJAM never wrote a check to CD Auto. MCJAM did not receive an invoice from CD Auto, nor did it receive monthly payment requests from CD Auto. Morales acknowledged an imbalance existed between the services provided by CD Auto and the services provided by MCJAM; however, Morales expected that these services would have "evened out" eventually. According to Morales, CD Auto prevented MCJAM from equalizing this imbalance because CD Auto had stopped using MCJAM for towing and started using one of MCJAM's competitors. Morales maintained that money was never discussed; the only arrangement between MCJAM and CD Auto was an exchange of services.

CD Auto's proposed jury charge contained one question, which the trial court incorporated into the jury charge.[2] CD Auto did not make any requests or objections at the charge conference.

---

[2]The proposed question was:

The trial court submitted three questions to the jury. Questions one and two related to MCJAM's defensive theories. Question one asked the jury if CD Auto and MCJAM had agreed to a barter agreement for the services provided. Question two asked the jury if MCJAM's failure to comply with its agreement with CD Auto was excused by CD Auto's prior repudiation of the agreement. The jury answered "no" to both questions. Question three related to damages only. Question three asked the jury how much money, if any, MCJAM owed CD Auto. The jury found that MCJAM owed CD Auto $68,724.13.

The trial court denied MCJAM's motion for judgment notwithstanding the verdict and entered judgment against MCJAM in the amount of $68,724.13. MCJAM appealed.

## DISCUSSION

In its third issue, MCJAM argues CD Auto waived its right to recover any damages because it did not request a jury question on its open account claim. In response, CD Auto argues that it established its open account claim as a matter of law, and therefore, there was no need to submit a jury question.

Generally, a party's complete failure to request a jury question on its ground of recovery waives its right to recovery on that ground. *Transit Enter., Inc. v. Addicks Tire & Auto Supply, Inc.*, 725 S.W.2d 459, 461-62 (Tex. App.—Houston [1st Dist.] 1987, no writ); TEX. R. CIV. P. 279; *see Double Diamond, Inc. v. Saturn*, 339 S.W.3d 337, 346-47 (Tex. App.—Dallas 2011, pet. denied) (concluding party waived its declaratory judgment claim when the jury made no findings in support of any element of the claim and the claim was not conclusively established). An

---

"How much money, if any, does the defendant, MCJAM, Inc., owe the plaintiff, CD Auto Services, Inc.?

Answer in dollars and cents for the amount owed, if any.

ANSWER: _____

exception to this rule exists when there is no genuine controversy and only one conclusion can be drawn from the evidence. *Addicks*, 725 S.W.2d at 462. Thus, an issue need not be submitted to the jury when the facts are undisputed or conclusively established. *Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex. 2006); *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex. 1971); *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

An open account is an "unpaid or unsettled account" or an "account that is left open for ongoing debit and credit entries by two parties that has a fluctuating balance until either party finds it convenient to settle and close, at which time there is a single liability." *Eaves v. Unifund CCR Partners*, 301 S.W.3d 402, 409 (Tex. App.—El Paso 2009, no pet.) (quoting BLACK'S LAW DICTIONARY (9th Ed. 2009)). An open account facilitates an on-going business relationship between two companies by allowing for crediting and debiting through multiple transactions over an extended period of time. *Sunshine Traders of El Paso, Inc. v. Dolgencorp., Inc.*, 219 Fed. Appx. 375, 377-78 (5th Cir. 2007). The elements of an open account claim are (1) transactions between the parties, (2) creating a creditor-debtor relationship through the general course of dealing, (3) with the account still being open, and (4) with the expectation of further dealing. *Eaves*, 301 S.W.3d at 408.

Here, the record shows CD Auto never requested a jury question on its open account claim. And, in its briefing, CD Auto acknowledges the trial court did not submit a jury question on its claim. Nevertheless, CD Auto asserts a jury question on its claim was unnecessary because the evidence conclusively established the existence of an open account. CD Auto further asserts MCJAM did not present any evidence disputing the existence of the account, the services provided, or the reasonableness of those services. We reject these arguments.

The evidence CD Auto presented did not conclusively establish all elements of CD Auto's claim. The account records are summary in nature. Although the account records indicate that both

CD Auto and MCJAM kept track of the services they provided, they do not explain the nature of the arrangement between CD Auto and MCJAM. While Terrazas's testimony indicated that he believed MCJAM had an open account with CD Auto and that MCJAM had an unpaid balance on its account, Terrazas's testimony was disputed by Morales's testimony. Morales testified that CD Auto and MCJAM had a barter agreement, which consisted of CD Auto performing services or repairs on MCJAM's vehicles and MCJAM towing vehicles for CD Auto's customers. Morales further testified that the parties never discussed money until the very end of their business relationship; that money was never exchanged; that CD Auto never sent MCJAM an invoice or requested payment at the end of any month; that MCJAM did not receive a check from CD Auto for its towing services; that MCJAM never wrote CD Auto a check for its vehicle services or repairs; and that the only arrangement between MCJAM and CD Auto was an exchange of services. At a minimum, the evidence presented by MCJAM disputed the existence of an open account and the creation of a creditor-debtor relationship. We conclude CD Auto's open account claim was neither conclusively established nor undisputed. Therefore, CD Auto was required to secure jury findings to support its claim.

Furthermore, a jury's negative findings on defensive issues cannot be used to support a plaintiff's claim for affirmative relief. *See Morris v. Holt*, 714 S.W.2d 311, 313 (Tex. 1986); *Grenwelge v. Shamrock Reconstructors, Inc.*, 705 S.W.2d 693, 694-95 (Tex. 1986). For example, in *Grenwelge*, a contractor sued homeowners for breach of contract. 705 S.W.2d at 694. At trial, a defensive issue about whether the plaintiff had breached its contract with the defendants was submitted to the jury and the jury answered "no" to this issue. *Id.* at 694. However, the plaintiff did not request an issue on its original contract claim and the issue was not submitted to the jury. *Id*. The jury awarded the plaintiff damages. *Id*. The trial court rendered judgment notwithstanding the verdict, but the court of appeals reversed and rendered judgment on the jury's damage award.

*Id*. The Texas Supreme Court held that the court of appeals improperly rendered judgment on the jury's damage award, reasoning that the jury's negative finding on a defensive issue could not be used to support the plaintiff's affirmative claim. *Id*. at 694-95. The supreme court reversed the judgment in the plaintiff's favor and rendered judgment that the plaintiff take nothing. *Id*. at 695.

Here, as in *Grenwelge*, the jury's negative finding regarding a barter agreement was a defensive issue, which could not support CD Auto's claim. *See id*. at 694; *Morris*, 714 S.W.2d at 313 ("The trial court cannot use a negative finding of a defensive issue to support a plaintiff's claim for affirmative relief."). By not requesting a question and by not obtaining findings on the elements of its claim, CD Auto waived its only ground of recovery. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 481 (Tex. 2017) (holding that the plaintiff waived his premises liability claim when he did not request a jury question on premises liability and did not obtain findings on the elements of premises liability); *Gulf States Util. Co. v. Low*, 79 S.W.3d 561, 565 (Tex. 2002) ("[A] party waives an entire theory of recovery or defense when not objecting to its omission from the charge."); TEX. R. CIV. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."). Therefore, we sustain MCJAM's third issue, reverse the trial court's judgment, and render judgment that CD Auto take nothing. *See Morris*, 714 S.W.2d at 313; *Grenwelge*, 705 S.W.2d at 694-95.

In light of our disposition of MCJAM's third issue, we need not address its first and second issues, which are unnecessary to the final disposition of this appeal.[3] *See* TEX. R. APP. P. 47.1 (requiring appellate courts to address all issues raised and necessary to the appeal's disposition).

---

[3]MCJAM's first and second issues challenge the sufficiency of the evidence to support the jury's negative findings on MCJAM's defensive issues.

**CONCLUSION**

We reverse the trial court's judgment and render judgment that CD Auto take nothing.

Karen Angelini, Justice